UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INSTITUTE FOR ENERGY RESEARCH, | |
|      Plaintiff, | |
|      v. | Civil Action No. 22-3414 (CRC) |
| FEDERAL ENERGY REGULATORY COMMISSION, | |
|      Defendant. | |

**DEFENDANT'S MEMORANDUM OF LAW**
**<u>IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

PROCEDURAL BACKGROUND...................................................................................... 1

LEGAL STANDARDS FOR SUMMARY JUDGMENT ................................................. 3

ARGUMENT .................................................................................................................... 7

   I.   FERC CONDUCTED AN ADEQUATE SEARCH........................................... 7

   II.   FERC PROPERLY IDENTIFIED RESPONSIVE RECORDS ..................... 8

   III.   FERC PROPERLY APPLIED FOIA EXEMPTIONS TO WITHHOLD LIMITED RECORDS .............................................................................................. 11

     A.   Exemption 5............................................................................................ 12

     B.   Exemption 6............................................................................................ 16

   IV.   FERC PROPERLY PRODUCED ALL SEGREGABLE RECORDS.......................... 18

CONCLUSION.................................................................................................................. 20

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) ........................................................... 2

*Campbell v. Dep't of Just.*, 164 F.3d 20, 27 (D.C. Cir. 1998) ....................................................... 3

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994) ..................................................................................................................................... 2

*Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) .... 3

*CIA v. Sims*, 471 U.S. 159, 166–67 (1985) ................................................................................... 2

*Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Lab.*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) ........................................................................................................................................ 4

*Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7 (2001) ...................... 2

*DiBacco v. Dep't. of the Army*, 926 F.3d 827, 834 (D.C. Cir. 2019). ........................................... 3

*Gallant v. NLRB*,
*26 F.3d 168 (D.C. Cir. 1994)* ...................................................................................................... 5

*John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) ................................................... 2

*Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) ..................................................... 4

*Machado Amadis v. Dep't of State,* 971 F.3d 364, 368 (D.C. Cir. 2020) ...................................... 2

*Mead Data Cent., Inc. v. U.S. Dep't of Air Force*,
*566 F.2d 242 (D.C. Cir. 1977)* .................................................................................................... 4

*Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 137 (D.D.C. 2011) .............................. 4

*Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) .......................................... 4

*Natural Res. Defense Council, Inc. v. Nuclear Regulatory Comm'n*,
*216 F.3d 1180 (D.C. Cir. 2000)* .................................................................................................. 4

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975) ........................................................... 3

*Oglesby v. Dep't. of the Army*, 920 F.2d 57, 68 D.C. Cir. 1990) .................................................. 3

*Perry v. Block*, 684 F.2d 121, 128-29 (D.C. Cir. 1982) ................................................................. 3

*Reliant Energy Power Generation, Inc. v. Fed. Energy Regulatory Comm'n*, 520 F. Supp. 2d 194, 200 (D.D.C. 2007) ............................................................................................................ 4

*Reps. Comm. for Freedom of the Press v. FBI*, 877 F.3d 399, 402 D.C. Cir. 2017) ..................... 2

*Riccardi v. Dep't of Just.*, 32 F. Supp. 3d 59, 63 (D.D.C. 2014) .................................................. 3

*Shapiro v. Dep't of Just.*, 40 F.4th 609, 612-13 (D.C. Cir. 2022) ................................................ 2

*Spirko v. U.S. Postal Serv.*,
*147 F.3d 992 (D.C. Cir. 1998)* .................................................................................................... 4

*Trans-Pacific Policing Agreement v. U.S. Customs Serv.*,
*177 F.3d 1022 (D.C. Cir. 1999)* .................................................................................................. 5

*U.S. Customs Serv.*,
*802 F.2d 525 (D.C. Cir. 1986)* .................................................................................................... 4

*U.S. Dep't of Justice v. Tax Analysts*,
*492 U.S. 136 (1989)* .................................................................................................................... 4

*Vaughn v. Rosen*,
*484 F.2d 820 (D.C. Cir. 1973)* .................................................................................................... 4

*Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975) ............................................................. 3

*Weisberg v. Dep't of Just.*, 705 F.2d 1344, 1350 (D.C. Cir. 1983) .............................................. 4

*Weisberg v. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) .............................................. 3

**Statutes**

5 U.S.C. § 552(a)(4)(B) ................................................................................................ 4

5 U.S.C. § 552(b) .................................................................................................... 4, 5

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................... 2

## INTRODUCTION

This case involves a Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, request Plaintiff made on August 9, 2022, to the Federal Energy Regulatory Commission ("FERC") requesting text messages for employees Sarah Venuto and Elin Katz and Commissioner Allison Clements for a specified date range. Plaintiff requested text messages between White House officials and those three named individuals and any text message using the terms "FERC," "GHG," "FOIA," and "methane."[1]

FERC made reasonable efforts to search for and provide all reasonably segregable records and has withheld only that information that is properly exempt from release under FOIA. As explained herein, in the attached Statement of Facts, Declaration of Carolyn Templeton, and *Vaughn* index,[2] no genuine dispute of material fact remains, and FERC is entitled to judgment as a matter of law.

## PROCEDURAL BACKGROUND

By letter dated August 9, 2022, Plaintiff submitted a FOIA request to FERC seeking copies of text messages for:

> copies of all text messages ["Text message" also includes here any message sent or received via Signal, WhatsApp, or Telegram] for officials named, below, whether person-to-person or as part of a "chat" (regardless of how many or the identities of the parties on the chat) which:
>
>> a)  includes anywhere, one or more of the words a) FERC, b) GHG (in any form, e.g., including also in GHGs), d) FOIA, and/or d) methane, regardless of the identity of any other parties to the correspondence; or

---

[1]     Defendant notes that the term "FERC" is the acronym for the Federal Energy Regulatory Commission. The search term, therefore, appears in many staff communication and over ninety percent of the responsive text messages that use this term do not relate to any particular subject matter.

[2]     *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

b) were sent to or from any of the following White House officials i) David Hayes, ii) Ali Zaidi, iii) Gina McCarthy iv) Philip Giudice, v) Arianna Menzelos, and/or vi) Jeff Marootian (again, which c) were sent/received at any time from September 1, 2021 through August 10, 2022, inclusive, regardless of the content of the correspondence.

The officials whose correspondence as described is covered, and for relevant time periods, are:

FERC Commissioner Allison Clements, for or covering the period December 8, 2020, through August 9, 2022, inclusive;

Sarah Venuto, of FERC's Office of External Affairs, for or covering the period April 1, 2021, through August 9, 2022, inclusive; and

Elin Katz, director of FERC's Office of Public Participation, for or covering the period October 1, 2021, through August 9, 2022, inclusive.

See ECF No. 7-1; *see also* Declaration of Carolyn Templeton ("Templeton Decl."), attached hereto, ¶ 7.  On August 10, 2022, FERC's Office of External Affairs staff sent an e-mail to acknowledging receipt of the request and providing the tracking number—FY22-081. See ECF No. 7-2; *see also* Templeton Decl. ¶ 8.  FERC began processing the request and searched the following offices: (1) Office of Commissioner Allison Clements, (2) the Office of External Affairs and (3) the Office of Public Participation.  *See* Templeton Decl. ¶ 8.  Allison Clements, Sarah Venuto, and Elin Katz searched their respective telephonic devices for responsive material and produced responsive text messages within the specified date range.  *See* Templeton Decl. ¶ 8.  With the assistance of Information Technology staff, these three individuals submitted screen shots of the responsive text messages for processing.  *Id.*

On September 22, 2022, FERC issued a determination letter releasing 69 text messages in total, with 47 texts released in full (Doc. Nos. 1-47).  *See* ECF No. 7-3; *see also* Templeton Decl. ¶ 11.  Seven text messages were released with redactions pursuant to FOIA Exemption 5 (Doc. Nos. 48-54).  *Id*.  One text message was released with redactions pursuant to both FOIA Exemptions 5 and 6 (Doc. No. 55).  *Id.*  14 text messages were released with redactions pursuant

to FOIA Exemption 6 (Doc. Nos. 56-69).  *Id.*  21 text messages were withheld in full pursuant to FOIA Exemption 5 (Doc. Nos. 70-90).  *Id.*

By letter dated September 23, 2022, Plaintiff filed an appeal concerning the June 2, 2022, determination letter.  *See* ECF No. 7-5; *see also* Templeton Decl. ¶ 12.  On November 1, 2022, FERC denied the appeal in full, finding that the search was reasonably calculated to uncover material and complied with the FOIA, that the Director properly identified responsive records and that the Director properly utilized FOIA Exemptions 5 and 6.  *See* ECF No. 7-7; *see also* Templeton Decl. ¶ 14.

Plaintiff filed an initial Complaint on November 8, 2022.  ECF No. 1.  Defendant filed its Answer on December 29, 2022.  ECF No. 6.  On January 3, 2023, Plaintiff filed an Amended Complaint.  ECF No. 7.  On January 17, 2023, Defendant filed its answer to the Amended Complaint.  ECF No. 9.

FERC hereby incorporates its attached Statement of Facts, the declaration of Carolyn Templeton, and the exhibits thereto; and the

### **LEGAL STANDARDS FOR SUMMARY JUDGMENT**

FOIA requires disclosure of certain agency records, it recognizes "that public disclosure is not always in the public interest" and enumerates several categories of documents exempt from disclosure.  *CIA v. Sims*, 471 U.S. 159, 166–67 (1985); *see also Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7 (2001); *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (FOIA exemptions are "intended to have meaningful reach and application").

Summary judgment is appropriate if "there is no genuine issue as to any material fact" and the "movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v.*

*Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

"To prevail on summary judgment, an 'agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested,' which it can do by submitting '[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'" *Shapiro v. Dep't of Just.*, 40 F.4th 609, 612-13 (D.C. Cir. 2022) (quoting *Reps. Comm. for Freedom of the Press v. FBI*, 877 F.3d 399, 402 D.C. Cir. 2017)); *see also Machado Amadis v. Dep't of State,* 971 F.3d 364, 368 (D.C. Cir. 2020) (an agency "must show that it 'conducted a search reasonably calculated to uncover all relevant documents.'").  "Agencies can satisfy this burden through a 'reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'" *Id.* (citation omitted). Such affidavits are entitled to "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Id.* (citation omitted).  Reasonableness, not perfection, constitutes the Court's guiding principle in determining the adequacy of a FOIA search. *See Campbell v. Dep't of Just.*, 164 F.3d 20, 27 (D.C. Cir. 1998); *Riccardi v. Dep't of Just.*, 32 F. Supp. 3d 59, 63 (D.D.C. 2014).

Courts afford agency search declarations "a presumption of good faith and can be rebutted only with evidence that the agency's search was not made in good faith." *Riccardi*, 32 F. Supp. 3d at 63 (citations and internal quotations omitted). "There is no requirement that an agency search every record system." *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 D.C. Cir. 1990). And relatedly, a failure to uncover a responsive document does not render the search inadequate; "the issue to be

resolved is not whether there might exist any . . . documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphasis in original); *see also Perry v. Block*, 684 F.2d 121, 128-29 (D.C. Cir. 1982) (agency need not demonstrate that all responsive documents were found and that no other relevant documents could possibly exist).

The defendant agency holds the burden of proof to justify its decision to withhold any documents. *DiBacco v. Dep't of Army*, 926 F.3d 827, 834 (D.C. Cir. 2019). There should be "considerable deference" to an agency's judgment regarding what constitutes part of its "give-and-take" by which a decision is made, because the agency is best situated to understand the confidentiality required to prevent injury to the quality of its decisions. *Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (citing *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975), and *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975)). An agency is entitled to summary judgment if it "proves that it has fully discharged its obligations" under the FOIA. *Reliant Energy Power Generation, Inc. v. Fed. Energy Regul. Comm'n*, 520 F. Supp. 2d 194, 200 (D.D.C. 2007) (citing *Weisberg v. Dep't of Just.*, 705 F.2d 1344, 1350 (D.C. Cir. 1983)).

FOIA requires that an agency release responsive information unless it is protected from disclosure by one or more of the FOIA's nine exemptions. *See* 5 U.S.C. § 552(b); *see also Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 150–51 (1989). The agency bears the burden of demonstrating that any withheld information falls into one or more of those exemptions. 5 U.S.C. § 552(a)(4)(B); *see also Nat. Res. Def. Council, Inc. v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000). An agency may meet its burden to establish the applicability of an exemption by providing a *Vaughn* index that "permit[s] adequate adversary testing of the agency's

claimed right to an exemption." *Nat'l Treas. Emps, Union v. U.S. Customs Serv.*, 802 F.2d 525, 527 (D.C. Cir. 1986) (citing *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977); *Vaughn v. Rosen*, 484 F.2d 820, 828 (D.C. Cir. 1973).

Additionally, although a *Vaughn* index is a common device used by agencies to meet their burden of proof, "the Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Lab.*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). The justification for invoking a FOIA exemption need only be "logical" or "plausible." *Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 137 (D.D.C. 2011) (citing *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)); *see also Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 998 n.4 (D.C. Cir. 1998) ("The form of the *Vaughn* index is unimportant and affidavits providing similar information can suffice.") (citing *Gallant v. NLRB*, 26 F.3d 168, 172-73 (D.C. Cir. 1994)).

Finally, FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this section." 5 U.S.C. § 552(b). The D.C. Circuit has held that district courts have an affirmative obligation to consider this issue and make segregability findings. *See Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

## ARGUMENT

### I.   FERC CONDUCTED AN ADEQUATE SEARCH

Here, there is no genuine dispute that the search performed was adequate. As explained in the declaration of Carolyn Templeton, upon receiving this request, FERC staff contacted the three individuals named in the FOIA request—Allison Clements, Sarah Venuto, and Elin Katz—and directed each of them to search their personal and official phones (where applicable) for text messages responsive to this request. *See* Templeton Decl. ¶ 15.  Each individual produced the responsive text messages in the form of screenshots to FERC staff for their review. *Id.*  No documents were located that were responsive to the second part of Plaintiff's request[3] and that all documents located included one of the four search terms included in the first part[4] of Plaintiff's request. *Id.*  FERC's search yielded 90 documents— identified sequentially as document no. 1 through document no. 90. *Id.*; *see also* Vaughn index.  FERC even searched non-FERC phone devices.*See* Templeton Decl. ¶ 15.  FERC also confirmed that Allison Clements, Sarah Venuto, and Elin Katz did not use the applications "such as Signal, WhatsApp, etc." *Id.*.

As set forth above, FERC staff conducted an exhaustive search for records responsive to Plaintiff's request. Although employees' text messages on their personal devices are generally not

---

[3]    The second part of the FOIA request sought text messages which:

b)       were sent to or from any of the following White House officials i) David Hayes, ii) Ali Zaidi, iii) Gina McCarthy iv) Philip Giudice, v) Arianna Menzelos, and/or vi) Jeff Marootian (again, which c) were sent/received at any time from September 1, 2021 through August 10, 2022, inclusive, regardless of the content of the correspondence.

[4]    The first part of the FOIA request sought text messages which:

a)       includes anywhere, one or more of the words a) FERC, b) GHG (in any form, e.g., including also in GHGs), d) FOIA, and/or d) methane, regardless of the identity of any other parties to the correspondence.

agency records, the three officials specified in Plaintiff's request searched their non-FERC phone devices for responsive material, and responsive material was identified and produced consistent with FOIA. *See* Templeton Decl. ¶ 15.  Moreover, the specified FERC officials did not use any of the other applications Plaintiff listed to conduct FERC business. Applying the standards governing searches, FERC's search plainly was reasonable and legally sufficient. FERC searched the places it reasonably determined were most likely to yield responsive records.  Accordingly, the Court should find that FERC satisfied its search obligations and award summary judgment in the agency's favor on this issue.

## II.   FERC PROPERLY IDENTIFIED RESPONSIVE RECORDS

FERC reviewed the text messages and properly identified the distinct records responsive to Plaintiff's request. *See Am. Immigr. Lawyers Ass'n v. Exec. Off. for Immigr. Review,* 830 F.3d 667, 678 (D.C. Cir. 2016) (providing that while agencies can only withhold exempt material, there "are a range of possible ways in which an agency might conceive of a 'record.'"). Those distinct records were then processed in response to Plaintiff's FOIA request.  Of the 90 records recovered, 47 (Doc. Nos. 1-47) were released in full; seven text messages (Doc. Nos. 48-54) were released with redactions pursuant to FOIA Exemption 5; one text message (Doc. No. 55) was released with redactions under FOIA Exemptions 5 and 6; 14 text messages (Doc. Nos. 56-69) were released with redactions consistent with FOIA Exemption 6; finally, 21 text messages were withheld in full under FOIA Exemption 5 (Doc. Nos. 70-90).  Templeton Decl. ¶ 11

During administrative phase, Plaintiff argued that FERC should have taken a much more expansive view of what constitutes a record because Plaintiff's request sought all relevant "threads."[5] However, the use of the term "thread" in the original FOIA request specifically refers

---

[5]     Plaintiff's request did not seek "threads" of text messages. Instead, the request was for "copies of all text messages for officials named, below, whether person-to-person or as part of a

to threads of emails, not text messages. Several pages after the request for text messages, in a boilerplate section titled "Definition of Information Sought/Delivery Standards," the request asked FERC to "consider as responsive entire email 'threads' containing any information responsive to this request, regardless whether any part of that thread falls outside the cited time parameters." Amended Compl. Ex. A, Doc. 7-1, at 4 (emphasis in original). That section also referenced the Security and Exchange Commission's Data Delivery Standards, which are not binding on or relevant to FERC's FOIA program; "press clippings" which would not be found in text messages; and other categories, such as metadata and "load files." *Id.* at 4-6. This language suggests that this part of the request was boilerplate language that Plaintiff included as part of other FOIA requests, inapplicable to this request for text messages.

This is not merely a situation of ambiguous boilerplate however, as "threading" is a concept uniquely applicable to email conversations,[6] which take place in a series of messages, replies, and forwards among different people under a single subject line, each set of which is known as a "thread."[7]

Software used for the organization of email, such as Outlook, can collect and present emails associated in "threads" or "conversations" which are organized by metadata. Text messages, on

---

"'chat'" . . . which includes anywhere, one or more of the words a) FERC, b) GHG (in any form, e.g., including also in GHGs), d) [sic] FOIA, and/or d) methane." Am. Compl., Ex. A, Doc. 7-1, at 1-2.

[6]     Though the term is also used in the context of bulletin board systems, newsgroups, and internet forums, it has no generally recognized applicability to text messages.

[7]     *See     e.g.,*      https://developers.google.com/gmail/api/guides/threads#:~:text=The%20Gmail%20API%20uses%20Thread,or%20to%20refine%20search%20results ("The Gmail API uses Thread resources to group email replies with their original message into a single conversation or thread. This allows you to retrieve all messages in a conversation, in order, making it easier to have context for a message or to refine search results.").

the other hand, have no such organizing principle. To the extent the concept applies, a "thread" of text messages could best be interpreted as the full conversation history between two phone numbers but adopting such an interpretation to fit Plaintiff's boilerplate would be unreasonable. The full history of every text between two persons, many of which are not even agency records, is not a single "record" simply because one message contained a keyword.

An individual's private texting does not become subject to FOIA simply because they may have texted about government business at one point or another. To rule otherwise "would do little, if anything, to further FOIA's goal of enhancing transparency and confidence in the workings of government." *Brady Ctr. to Prevent Gun Violence v. Dep't of Just.*, 410 F. Supp. 3d 225, 237 (D.D.C. 2019) (finding that the agency decision to treat attachments as a separate document from the email "did not undermine the 'integrity' of the responsive records."). Further, agencies may treat distinct text messages and emails as individual records. *See CREW v. Dep't of Just.*, Civ. A. No. 18-0007, 2020 WL 2735570, at *3-4 (D.D.C. May 26, 2020) (finding that agency appropriately "defined each single email and each single text as 'a record," while rejecting plaintiff's argument that "a record must constitute only 'the full native form in which it is maintained by the agency"); *see also Gellman v. Dep't of Homeland Sec.*, Civ. A. No. 16-0635, 2020 WL 1323896, at *3 (D.D.C. Mar. 20, 2020) (affirming agency approach that withheld all unique emails that it deemed non-responsive, including by redacting any non-responsive emails that appear on the same page as responsive ones).

The only logical way to read Plaintiff's request is therefore for the specific texts that included the specified search terms. *See* Templeton Decl. ¶ 16. Any other approach would have been arbitrary as to what other texts to produce as a text message conversation is not comparable to an email thread. *Id.* Those texts reviewed which did concern governmental business were

treated as agency records and released where one of the exemptions to FOIA was not found to apply or where no foreseeable harm was identified. Even assuming that FERC staff should have interpreted the FOIA request to include "threads," FERC captured all required agency records by searching all the text messages available and producing those agency records responsive to the keywords in Plaintiff's FOIA request. Therefore, FERC appropriately identified responsive agency records.[8]

## III.   FERC PROPERLY APPLIED FOIA EXEMPTIONS TO WITHHOLD LIMITED RECORDS

As explained below and as detailed in the Templeton Declaration and the *Vaughn* index, FERC properly relied on Exemptions 5 and 6 to withhold a limited amount of information in response to Plaintiff's request.

Under FOIA, federal courts have jurisdiction to compel the production of agency records only where those records have been "improperly withheld." 5 U.S.C. § 552(a)(4)(B); *GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 384 (1980). "FOIA cases are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009). When the withholding of material responsive to a FOIA request is at issue, the government agency has the burden of showing that the material withheld falls within a FOIA statutory exemption to disclosure. *See Leadership Conf. on Rts. v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005). A court may grant summary judgment based solely on information in

---

[8]     Defendant notes the Plaintiff's subsequent request for documents related to Commissioner Clements stems from this particular request.  *See* Templeton Decl. ¶ 17.  In that request, the Plaintiff used the information released to him from this FOIA to make a broader follow-up request for all texts sent or received from a particular individual. *Id.*  This demonstrates that the method used to search for and produce documents was appropriate, as thereafter, Plaintiff could use what was produced as a starting point to request additional material. This is the most efficient way to respond to a request that simply asks for four general search terms (including the acronym for the agency) for a specified date range with no other guidance.

an agency's declarations if they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). After asserting exemptions, an agency must release "[a]ny reasonably segregable portion of a record" and provide it to the requesting party "after deletion of the portions which are exempt." 5 U.S.C. § 552(b).

### A.   <u>Exemption 5</u>

FERC properly applied FOIA Exemption 5 to withhold twenty-one text messages in full (Doc. Nos. 70-90), and parts of eight additional text messages (Doc. Nos. 48-55). Exemption 5 allows agencies to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). One well-recognized civil discovery privilege that provides for protection under Exemption 5 is the deliberative process privilege. *See Nat'l Ass'n of Criminal Def. Lawyers v. Exec. Office for U.S. Atty's*, 844 F.3d 246, 249 (D.C. Cir. 2016) (the "exemption allows the government to withhold records from FOIA disclosure under at least three privileges" including "the deliberative-process privilege"); *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). That privilege—and in turn Exemption 5—protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Sears*, 421 U.S. at 150.

The need for protection "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front-page news, and its object is to enhance 'the quality of agency decisions,' by protecting open and frank discussion among those who make them within the Government." *Klamath*, 532 U.S. at 8-9

(citations omitted) (quoting *Sears*, 421 U.S. at 151); *see also Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) (privilege "serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism"). As is well established, documents and information are protected from disclosure under the deliberative process privilege if they are "'predecisional' and 'deliberative.'" *Pub. Citizen, Inc. v. Off. of Mgmt. & Budget*, 598 F.3d 865, 874 (D.C. Cir. 2009). "Both requirements stem from the privilege's 'ultimate purpose, [which] . . . is to prevent injury to the quality of agency decisions' by allowing government officials freedom to debate alternative approaches in private." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (citing *Sears*, 421 U.S. at 151) (alterations in original)). Ultimately the standard to determine whether a document is both predecisional and deliberative is "whether the document is so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency." *Coastal States*, 617 F.2d at 866.

First, the withheld records are predecisional documents. "A document is predecisional if it was 'prepared in order to assist an agency decision maker in arriving at his decision,' rather than to support a decision already made." *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Renegotiation Bd. v. Grumman Aircraft*, 421 U.S. 168, 184 (1975)). A document is deemed "'predecisional' if it precedes, in temporal sequence, the 'decision' to which it relates.'" *Abtew v. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015) (quoting *Senate of Commonwealth of P.R. v. Dep't of Just.*, 823 F.2d 574, 585 (D.C. Cir. 1987)). The withheld text messages in this case were frank conversations between agency personnel

concerning how to proceed on certain matters. None of them reflected agency decisions themselves. None of the withheld records describe agency action already taken.

Second, the withheld records are deliberative. A document is "deliberative" if it is "a part of the agency give-and-take . . . by which the decision itself is made." *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975). In essence, this means that "the communication is intended to facilitate or assist development of the agency's final position on the relevant issue." *Nat'l Sec. Archive*, 752 F.3d at 463 (citing *Russell v. Dep't of Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982)).

Under FOIA Exemption 5, FERC correctly redacted parts of text messages and full text messages that reflect deliberations or are part of the decision-making process. *See* Templeton Decl. ¶¶ 21-24. The affected text messages "involve only Commission staff and their efforts to resolve matters before the Commission." *Id.* ¶ 24. Indeed, "the 21 text messages withheld in full or in part under FOIA Exemption 5 reflect FERC's internal deliberations pertaining to contemplated policy actions." *Id.* ¶ 22. Disclosure of such information would expose and harm the deliberative process, which Exemption 5 is intended to protect. *See, e.g.*, *Klamath*, 532 U.S. at 8-9 ("The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government") (internal citations and quotation marks omitted); *Sears*, 421 U.S. at 149; *Odland v. FERC*, 34 F. Supp. 3d 3 (D.D.C. 2014) (protecting email and drafts); *Ctr. for Medicare Advocacy v. Dep't. of Health & Human Servs.*, 577 F. Supp. 2d 221, 236 (D.D.C 2008) (protecting advice, recommendations, and suggestions).

Disclosure would not only expose and harm the deliberative process, but also risk chilling free and open internal discussion by revealing candid remarks between employees, causing public confusion by disclosing analysis, discussion, or conjecture that ultimately did not ripen into the final conclusions of agency decisionmakers. *See* Templeton Decl. ¶ 23. These communications frequently involved preparing for upcoming actions and it is my understanding that a lack of such preparation would significantly inhibit both the day-to-day operations of the agency, as well as its ability to make appropriately considered and deliberated decisions to benefit the public and accomplish the agency's mission. *Id.* Moreover, none of the authors of these text messages had any expectation that these internal deliberations would be made public. *Id.*

The chilling effect on agency internal deliberations, detriment to staff cohesion, and stifling of free and open internal discussion are clear and foreseeable harms that would result from releasing the withheld text messages. The deliberative process privilege aims "[t]o protect agencies from being 'forced to operate in a fishbowl.'" *Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021) (quoting *EPA v. Mink*, 410 U.S. 73, 87 (1973)). It recognizes "that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *Klamath*, 532 U.S., at 8-9. Here, it is undeniable that the disclosure of text messages, and portions of text messages, would create a disincentive for FERC employees to have discussions that are necessary to enable leaders at large, complex organizations to prepare for and address the many discrete issues that they confront each day. These communications frequently involved preparing for upcoming actions and a lack of such preparation would significantly inhibit both the day-to-day operations of the agency, as well as its ability to make appropriately considered and deliberated decisions to benefit the public and accomplish the agency's mission. *See* Templeton Decl. ¶ 23. It is foreseeable that disclosure of these text messages would lead to public

confusion as to the FERC policy determinations.  *See* Templeton Decl. ¶ 24.  It is also foreseeable that disclosure would harm the ability of advisers and other staff members to provide research and recommendations to decisionmakers, which would hamper the ability of decisionmakers to make policy calls and decisions.  *Id.*  To prevent this foreseeable harm from occurring, FERC properly withheld in full and in part certain text messages under Exemption 5.

### B.   <u>Exemption 6</u>

FERC properly applied FOIA Exemption 6 to withhold personally sensitive information from parts of eighteen text messages (Doc. Nos. 55-69, 77-79).[9]  FERC redacted portions of these text that protect personal information, the contact information of private citizens, and the names of lower-level staff.  *See* Templeton Decl. ¶ 26.

FOIA Exemption 6 permits the withholding of "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The term "similar files" is broadly construed and includes "[g]overnment records on an individual which can be identified as applying to that individual." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual."); *Gov't Accountability Project v. Dep't of State*, 699 F. Supp. 2d 97, 105-06 (D.D.C. 2010).

In assessing the applicability of Exemption 6, courts weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy."

---

[9]    Of these, FERC applied both Exemptions 5 and 6 to four records, Doc. Nos. 55 and 77-79. *See Vaughn* index.

*Lepelletier*, 164 F.3d at 46; *Chang v. Dep't of Navy*, 314 F. Supp. 2d 35, 43 (D.D.C. 2004). "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 47 (quoting *Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 497 (1994)) (alterations in original); *Beck v. Dep't of Just.*, 997 F.2d 1489, 1492 (D.C. Cir. 1993) (quoting *Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)). "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose." *Beck*, 997 F.2d at 1492.

Here, FERC properly invoked FOIA Exemption 6 to protect personal information. FERC redacted portions of the text messages that include personal information, the contact information of private citizens, and the names of lower-level staff.   *See* Templeton Decl. ¶ 26.  Releasing this information would go against Congress' intent to protect individual privacy under FOIA Exemption 6. *See Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006) (explaining FOIA Exemption 6 applicability to "bits of personal information, such as names and addresses, the release of which could create a palpable threat to privacy").

In contrast, Plaintiff cannot identify a public interest that would be served by the disclosure of this information. *See Am. Fed'n of Gov't Emps. v. Broad. Bd. of Governors*, 711 F. Supp. 2d 139, 156 (D.D.C. 2010) (upholding redaction of names and other information relating to another individual pursuant to Exemption 6); *Gov't. Accountability Project v. Dep't of State*, 699 F. Supp. 2d 97, 105-06 (D.D.C. 2010) (concluding that agency properly redacted personal email addresses of applicants for board positions because "releasing their email addresses serves no public interest because these email addresses would not reveal 'what the government is up to'"). Indeed, courts have held that "[w]hile there may be some public interest in obtaining the identifying information

of the Federal employees at issue, disclosure would not shed any light on the workings of [an

agency]." *Canaday v. U.S. Citizenship & Immigr. Servs.*, 545 F. Supp. 2d 113, 118 (D.D.C. 2008).

Because there is no countervailing public interest that can overcome the privacy interest of

these individuals, FERC properly redacted this private information pursuant to Exemption 6. *See*

*Beck v. Dep't of Just.*, 997 F.3d 1489, 1494 (D.C. Cir. 1993) (when there is no public interest at

all, the court "'need not linger over the balance; something outweighs nothing every time'")

(quoting *Nat'l Ass'n of Retired. Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989)).

Further, the foreseeable harm in releasing this information—for example, the contact

information of private citizens and the names of lower-level staff—is readily apparent on its face.

Namely, disclosure "could invite unwanted intrusions and result in an unwarranted invasion of

personal privacy." Templeton Decl. ⁋ 27. "[A] court may find the foreseeable-harm requirement

satisfied if 'the very context and purpose of' the withheld material 'make[s] the foreseeability of

harm manifest.'" *Amiri v. Nat'l Sci. Found.*, Civ. A. No. 20-2006 (TNM), 2021 WL 4438910,

at *13 (D.D.C. Sept. 28, 2021), *aff'd*, No. 21-5241, 2022 WL 1279740 (D.C. Cir. Apr. 28, 2022);

*cf. WP Co. LLC v. SBA.*, 575 F. Supp. 3d 114, 121 (D.D.C. 2021) (affirming withholding of social

security numbers under Exemption 6, and observing that "it is not difficult to note how people

would be injured by the release of their SSNs").

## IV.    FERC PROPERLY PRODUCED ALL SEGREGABLE RECORDS

Here, FERC withheld 21 documents in full because the information contained was not

segregable.[10]  *See* Vaughn index.  If a record contains information exempt from disclosure, any

"reasonably segregable," non-exempt information must be disclosed after redaction of the exempt

information. 5 U.S.C. § 552(b). Non-exempt portions of records need not be disclosed if they are

---

[10]      The withheld documents were Doc. Nos. 70-91.  *See* Vaughn index.

"inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Exec. Off. of President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. Dep't of Just.*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

Where non-exempt information could be segregated from exempt information, FERC segregated and disclosed the non-exempt information from the text messages that were withheld in part. *See* Templeton Decl. ¶ 27. This process involved a thorough review of each individual text message. As the redacted text messages released in the exhibits demonstrate, almost all text messages were released to Plaintiff, either full or in redacted form. Therefore, the Court should find that FERC has properly complied with the duty to segregate exempt from non-exempt information.

*        *        *

**CONCLUSION**

For the reasons set forth above, FERC respectfully requests that this Court grant summary

judgment in favor of FERC as to all claims in this case.


Date:   April 21, 2023                          Respectfully submitted,
        Washington, DC

                                                MATTHEW M. GRAVES
                                                D.C. Bar No. 481052
                                                United States Attorney

                                                BRIAN P. HUDAK
                                                Chief, Civil Division

                                                By:   */s/ T. Anthony Quinn*
                                                T. ANTHONY QUINN
                                                D.C. Bar No. 415213
                                                Assistant United States Attorney
                                                Civil Division
                                                601 D Street NW
                                                Washington, DC 20530
                                                (202) 252-7558
                                                tony.quinn2@usdoj.gov

                                                *Attorneys for the United States of America*