UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

INSTITUTE FOR ENERGY RESEARCH,

*Plaintiff*,

v.

FEDERAL ENERGY REGULATORY
COMMISSION,

*Defendant*.

Civil Action No. 22-3414 (CRC)

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND
<u>OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................................... 1

I.      Defendant Properly Construed Plaintiff's FOIA Request ................................................. 1

II.     Defendant Properly Withheld Records Subject to Exemption 5 Based on the
        Deliberative Process Privilege ........................................................................................ 3

        A.      Deliberations Concerning External Matters............................................................ 5

        B.      Deliberations Concerning Internal Policy Development ......................................... 7

        C.      Release of Records Withheld Under Exemption 5 Would Foreseeably Harm
                Defendant's Deliberative Process ......................................................................... 9

III.    Defendant Properly Withheld Records Subject to Exemption 6 ...................................... 11

        A.      Names of Agency Staff........................................................................................ 12

        B.      Phone Numbers.................................................................................................... 14

        C.      Prospective Career Information ........................................................................... 15

IV.     Plaintiff's Challenge to the *Vaughn* Index's Adequacy................................................ 16

CONCLUSION..................................................................................................................... 19

Defendant Federal Energy Regulatory Commission, by and through undersigned counsel, respectfully replies in support of its motion for summary judgment and opposes Plaintiff Institute for Energy Research's cross-motion for summary judgment. As explained in further detail below, Defendant conducted an adequate search for records responsive to Plaintiff's request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, properly withheld records exempt under Exemptions 5 and 6, the release of which foreseeably would harm interests that those exemptions protect, and released all non-exempt, reasonably segregable information. This Court thus should grant Defendant summary judgment and deny Plaintiff's cross-motion for summary judgment.

## ARGUMENT

## I.     Defendant Properly Construed Plaintiff's FOIA Request

Plaintiff's argument that Defendant read its FOIA request unduly narrowly is meritless. *First*, Defendant appropriately did not read boilerplate language in the request concerning "email 'threads,'" Am. Compl. ¶ 17, ECF No. 7, as encompassing email threads within a request that specifically sought text messages. Although an agency must read a FOIA request liberally, it "should read FOIA requests as drafted, not as . . . the requester might wish it was drafted." *Nat'l Sec. Counselors v. CIA*, 969 F.3d 406, 410 (D.C. Cir. 2020) (cleaned up). Plaintiff's request by its plain terms was limited to "text messages." FOIA Request at 1, ECF No. 7-1. Plaintiff specifically defined the phrase "text messages" to include "any message sent or received via Signal, WhatsApp, or Telegram," but did not define it to include emails. *Id.* at 1 n.2; *see also EchoStar Satellite LLC v. FCC*, 704 F.3d 992, 1000 (D.C. Cir. 2013) ("to express or include one thing implies the exclusion of the other, or of the alternative").

The request's use of generic boilerplate language stating, "Please consider as responsive entire email 'threads' containing any information responsive to this request, regardless whether any part of that thread falls outside the cited time parameters," FOIA Request at 4, does not expand

the request's scope to emails. Read in context, this language means only that if an email thread contains responsive information, the entire email is responsive even if parts of the email thread fall outside the specified time parameters. But here, no email could contain responsive information, as the request by its plain terms is limited to text messages. *Id.* at 1. While this may render the "email" language surplusage, such language seems to be boilerplate included in many or all FOIA requests that Plaintiff files such that viewing it as surplusage does not undermine the request's meaning as drafted. *See Amoco Prod. Co. v. Watson*, 410 F.3d 722, 734 (D.C. Cir. 2005) ("our preference for avoiding surplusage constructions is not absolute").

Nor did Defendant err in producing individual responsive text messages, rather than the full threads in which the text messages appeared. "Under FOIA, agencies instead in effect define a 'record' when they undertake the process of identifying records that are responsive to a request." *Am. Immigr. Laws. Ass'n v. Exec. Off. for Immigr. Rev.*, 830 F.3d 667, 678 (D.C. Cir. 2016). Thus, as Judge Chutkan has explained, an agency may treat a single message in a thread as a "record," rather than the entire thread. *See Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Just.*, Civ. A. No. 18-0007 (TSC), 2020 WL 2735570, at *3-4 (D.D.C. May 26, 2020) (agency reasonably "defined each single email and each single text as 'a record'"). Defendant reasonably defined each separate text message—i.e., each distinct unit of text transmitted to a recipient after hitting the send button—as a "record" responsive to Plaintiff's request for "text messages," producing responsive text messages without producing unresponsive records. Notably, because a text message thread is open-ended and lacks a formal end-date, Plaintiff's argument either would require an agency to make a subjective determination as to when a given conversation has reached an end point or produce all text messages between two individuals, including countless messages containing no responsive information. While an agency could redact information subject to a FOIA

2

exemption if its release foreseeably would harm an interest that exemption protects, requiring an agency to review each and every text message between two individuals whenever a requester seeks any message between those individuals would impose significant burdens on its processing operations, diminishing its ability to respond to that request and other requests in a timely manner.

## II.     Defendant Properly Withheld Records Subject to Exemption 5 Based on the Deliberative Process Privilege

The deliberative process privilege "protects agency documents that are both predecisional and deliberative." *Hostetler v. Dep't. of Com.*, 473 F.3d 312, 322 (D.C. Cir. 2006). The privilege protects records "prepared to help the agency To show that a record is predecisional, an agency need not identify a specific final decision on the subject, but only explain the role the contested document played in the deliberative process. *See Access Reps. v. Dep't of Just.*, 926 F.2d 1192, 1196 (D.C. Cir. 1991). "[T]he exemption aim[s] at protecting the decisional process, [and] many processes might not ripen into agency decisions;" accordingly, "the exemption does not turn on the ability of an agency to identify a specific decision in connection with which a [record] is prepared." *Id.* (cleaned up); *see also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 n.18 (1975) (satisfying "predecisional" requirement does not "turn[ ] on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared" where records stem from "a continuing process of examining their policies"). The relevant inquiry simply is "whether [a record] communicates a policy on which the agency has settled." *Fish & Wildlife Serv. v. Sierra Club,* 141 S. Ct. 777, 786 (2021).

A document is deliberative, meanwhile, if "it is prepared to help the agency formulate its position," and "reflects the give-and-take of the consultative process." *Reps. Comm. for Freedom of Press v. FBI*, 3 F.4th 350, 362 (D.C. Cir. 2021) (cleaned up). Such records typically reflect the "back-and-forth exchange of ideas, constructive feedback, and internal debate over how best to

promote and to preserve" an agency's agenda. *Id.* at 364. "[T]he privilege serves to protect the deliberative process itself, not merely documents containing deliberative material." *Mapother v. Dep't of Just.*, 3 F.3d 1533, 1537 (D.C. Cir. 1993).

Because many of the records at issue are undated, Defendant determined their predecisional nature from their contents, which address cross-cutting matters such as the analysis of greenhouse gas emissions. *See Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006) (undated records predecisional because their contents "establish a chronology" by prospectively discussing preliminary stages of an administrative process); *see also* 2d Templeton Decl. ¶¶ 9-12 (discussing records); Rev. *Vaughn* Index.

Defendant has asserted the deliberative process privilege to cover text messages addressing a broad range of agency policies whose sole commonality is the presence of the term "FERC," an acronym for Defendant. 2d Templeton Decl. ¶¶ 9-12. Such records were not intended for general or public distribution and consist of raw and unpolished statements which do not always expressly state which ongoing matter they relate to of the many issues which agency leaders must address on an emergent basis. Defendant has identified the decisions to which text messages relate by their contents with as much specificity as possible without thwarting Exemption 5's purpose. *See King v. Dep't of Just.*, 830 F.2d 210, 224 (D.C. Cir. 1987) (agency should describe withheld record with "as much information as possible without thwarting the exemption's purpose"); 2d Templeton Decl. ¶ 9 (foreseeable harm from revealing certain information about decisionmaking process).

The records withheld as deliberative fall into two buckets. The first includes deliberations concerning the agency's external communications such as public statements, press releases, social media, and communications with Congress. The second includes deliberations relating to the

development of commission rules, orders, and pending votes, legal or policy concerns influencing those decisions, as well as matters relating to other administrative policies, such as about FOIA.

### A.      Deliberations Concerning External Matters

Defendant withheld in full or part ten records reflecting deliberative processes relating to social media (records 49, 55, and 72-79), four records relating to public statements or media responses (records 48, 70, 82, and 86), and three records relating to potential congressional hearings or briefings (records 51 and 81). Agency deliberations about what information to present to the public and/or Congress, and how to present it, fall within the deliberative process privilege's scope. *See, e.g.*, *CREW v. Dep't of Just.*, 45 F.4th 963, 975 (D.C. Cir. 2022) ("an agency's deliberations about how to communicate its policies are privileged"); *Campaign Legal Ctr. v. Dep't of Just.*, 34 F.4th 14, 24 (D.C. Cir. 2022) ("agency choices about what rationales, justifications, and limitations to provide—and which to leave out—in articulating an important agency decision can involve difficult and substantive policy determinations. Debate and discussion about such statements precede—are predecisional to—the actual determination of how best both to define the scope and contours of the new policy, and to persuasively communicate its terms and rationale to the public."); *Reps. Comm.*, 3 F.4th at 362-363 ("the privilege may extend to internal deliberations over how best to promote or preserve an existing policy in the midst of public debate over whether the government should have such a policy," such as records reflecting agency's response to "congressional and public criticisms"); *Access Reps. v. Dep't of Just.*, 926 F.2d 1192, 1196 (D.C. Cir. 1991) (privilege covered records on agency's strategy to "shepherd [certain legislation] through Congress").

Seven of the ten records relating to social media (records 49, 72-73, and 76-79) concern an incident in which former agency staff may have violated agency social media policies. These records discuss (1) whether a violation had occurred, and (2) how to respond if so. 2d Templeton

Decl. ¶ 10(a). The withheld records do not reflect or constitute final decisions, making them both predecisional and deliberative. The remaining social media records (records 55, 74, and 75) discuss whether or not to post particular tweets, making them also predecisional and deliberative about how to carry out agency public relations strategy. *Id.*

All four records relating to public statements (records 48, 70, 82, and 86), meanwhile, concern the timing, contents, and nature of statements which had not been made at the time of the communications, making them predecisional and deliberative. Record 48 concerns the process by which a proposed joint public statement was being prepared at the time of the text message. Rev. *Vaughn* Index at 2. Record 70 is a discussion between agency officials about whether to have a particular agency employee respond to a particular media inquiry, and if so, how he should be attributed in any reporting. *Id.* at 6. Record 82 is a remark concerning the form taken by the intra-agency review process before issuing draft press releases. *Id.* at 8. Record 86 contains draft language proposed as a public statement to the media concerning an unusually contentious public meeting of the agency. *Id.* at 9. Finally, the three records relating to Congress (records 50, 51, and 80) concern when and how specific briefings or testimony should take place. *Id.* at 4, 8. Defendant properly withheld these records, which concerned the content, timing, and manner of its external communications, under Exemption 5 based on the deliberative proves privilege.

Plaintiff argues that discussions about social media policy, how to brief Congress, or what and how information should be conveyed to the media should be categorically excluded as not deliberations about a pending policy decision. Pl.'s Mem. 12-13. The caselaw that it cites for this proposition, however, does not support its argument. *Mayer, Brown, Rowe & Maw LLP v. IRS*, 537 F. Supp. 2d 128, 136 (D.D.C. 2008), involved records reflecting efforts to "ascertain whether what [the agency was] representing in [a] slide [was] actually the positions reflected" in a revenue

ruling that already had been issued. In other words, the record concerned decisions that the agency already had made—both the ruling itself, and the agency's decision on how to present information about that ruling to the public—and did not relate to any ongoing deliberation. *Fox News Network, LLC v. Dep't of Treasury*, 911 F. Supp. 2d 261, 281 (S.D.N.Y. 2012), meanwhile, concluded that records reflecting "mere messaging" do not fall within the privilege's scope, but as explained, the D.C. Circuit has held otherwise. And while Plaintiff cites *Reporters Committee*, it fails to explain how that case supports its position. As explained earlier, *Reporters Committee* undermines Plaintiff's position, as it recognized that the deliberative process privilege protects records about how to communicate an agency's decision to the public. *See* 3 F.4th at 363. The cases that Plaintiff cites regarding records on agency interactions with Congress, meanwhile, are inapposite—they involved records delivered to Congress that were not pre-decisional and had lost their intra-agency character. *See* Pl.'s Mem. at 13 (citing cases); *see also Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 463 (D.C. Cir. 2014) ("To be pre-decisional, the communication (not surprisingly) must have occurred before any final agency decision on the relevant matter."); *Elec. Frontier Found. v. Dep't of Just.*, 890 F. Supp. 2d 35, 46 (D.D.C. 2012) ("voluntary disclosure of privileged material to unnecessary third parties waives the deliberative process privilege for the document or information specifically released" (cleaned up)).

## B.    Deliberations Concerning Internal Policy Development

The second category of deliberative information that Defendant withheld relates to implementation of Defendant's regulatory duties. Two records (records 54 and 87) concern the voting intention of commissioners on particular matters. *See* Rev. *Vaughn* Index at 4, 9. One (record 90) describes specific discussions concerning the development of a rule's text before a notice of proposed rulemaking was issued. *Id.* at 10. One (record 80) describes the timing and personnel necessary for distribution of information relating to Defendant's responsibilities under

FOIA. *Id.* at 8. Seven records (records 52, 53, 83, 84,[1] 85, 88, and 89) are communications of legal and policy concerns among senior Commission staff about options for how to implement its statutory duties to regulate energy markets, and its evolving stance on how to consider greenhouse gas emissions. *Id.* at 4, 8-9.

Plaintiff's argues that Defendant cannot have meaningful deliberations concerning FOIA because its interpretation of FOIA is not owed deference, Pl.'s Mem. at 14, is meritless. What matters is a record's "predecisional [and] deliberative character," not its specific topic. *Machado Amadis v. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020). Plaintiff cites no authority for the notion that the deliberative process privilege covers only those records relating to a matter as to which the agency's interpretation warrants deference. Indeed, as explained above, the D.C. Circuit has recognized that records concerning deliberations on how to communicate information to the public and/or Congress, which plainly are not matters as to which an agency merits interpretive deference, fall within the privilege's scope. The remaining cases Plaintiff cites address mechanical applications of rigid agency policy, not the complex legal and policy considerations necessary for making FOIA determinations and setting public records policy. *See* Pl.'s Mem. at 14.

Plaintiff also argues that record 83 cannot be deliberative, as discussion of "court precedent" implies that the author is simply "applying existing legal rules" in the manner of a tax auditor. Pl.'s Mem. at 15. But that simply does not follow logically, as deliberations can include discussion and analyses of judicial precedent, as well as interpretation for non-lawyers of a ruling's meaning for the agency's conduct. Plaintiff cites no authority for the idea that communications involving the application of law to facts categorically are nondeliberative.

---

[1]     While Defendant initially identified record 84 as relating to its "contracts," upon further review, the record concerns policy alternatives regarding certain types of contracts between private parties during the agency's regulation of energy markets. 2d Templeton Decl. ¶ 11.

Finally, Plaintiff argues that discussions of prior agency decisions and lessons learned from them in records 88 and 89 are not predecisional and have only a "tangential relationship" to future policymaking. Pl.'s Mem. at 15. But the "continuing process of examining [agency] policies" falls within deliberative process privilege. *Sears, Roebuck & Co.*, 421 U.S. at 151 n.18. Learning from an agency's prior decisions to inform its present decision-making is part of the "consultative process" by which agency leaders coordinate among themselves and with expert staff "to help the agency formulate its position," *Sierra Club,* 141 S. Ct. at 786.

## C. Release of Records Withheld Under Exemption 5 Would Foreseeably Harm Defendant's Deliberative Process

Defendant has shown that disclosing the records withheld under the deliberative process privilege will chill agency staff from freely communicating among themselves, thus harming the quality of agency deliberations. Disclosing informal communications among agency staff would deny "agencies a space within which they may deliberate." *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 776 (D.C. Cir. 1988). Specifically, revealing agency staff's private, candid remarks would cause public confusion by disclosing agency analysis, discussion, or conjecture that ultimately did not ripen into final conclusions of agency decisionmakers. *See* 1st Templeton Decl. ¶ 23. Such communications often involved preparing for upcoming actions such as agency votes or notices of proposed rulemaking, and the lack of such preparation would significantly inhibit both the agency's day-to-day operations and ability to make considered and deliberated decisions to benefit the public and accomplish the agency's mission. *Id.* Moreover, none of the authors of the records at issue expected that these internal deliberations would be made public. *Id.* If agency staff knew their internal concerns might be made public, they would be chilled from sharing their concerns with one another in writing, 2d Templeton Decl. ¶ 9(a), which could negatively impact the quality and thoroughness of the agency's decision-making. *See Mead Data*

*Ctr. v. Dep't of Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977) ("the quality of administrative decision-making would be seriously undermined if agencies were forced to operate in a fishbowl because the full and frank exchange of ideas on legal or policy matters would be impossible" (internal quotation marks omitted)). They also would be chilled from sharing and discussing preliminary opinions or beliefs before reaching decisions if they feared that their remarks would later become a subject of public controversy, lead to legal risk, or have negative professional (or other) consequences. *Id.* ¶ 9(b); *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) ("officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news"). And notably, because the records at issue are text messages, it is likely that their contents are relatively casual and unguarded, amplifying the chilling effect that their disclosure would have.

Finally, the risk of public confusion from the release of records about policy deliberations which were never finalized, or that did not reflect the final agency decision-making, is particularly acute. Such public confusion would result in speculation about changes in agency policy within jurisdictional markets and could cause unpredictable consequences, including potential harms to energy consumers. 2d Templeton Decl. ¶ 9(c); *see also Reps. Comm.*, 3 F.4th at 361 (deliberative process privilege "guards against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action" (internal quotation marks omitted)); *Campaign Legal Ctr.*, 34 F.4th at 23 (privilege "protects the public from being misled by documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action" (internal quotation marks omitted)); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) (same); *Petro. Info. Corp. v. Dep't of Interior*, 976 F.2d 1429,

1437 n.10 (D.C. Cir. 1992) ("risk of public confusion [is] a subsidiary rationale for the deliberative process privilege"); *Jordan v. Dep't of Just.*, 591 F.2d 753, 772-73 (D.C. Cir. 1978) (privilege "protects the public from the confusion that would result from premature exposure to discussions occurring before the policies affecting it had actually been settled upon").

## III.   Defendant Properly Withheld Records Subject to Exemption 6

Under Exemption 6, courts must balance an individual's "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999). "The only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Id.* at 47 (internal citations omitted). "Information that reveals little or nothing about an agency's own conduct does not further the statutory purpose." *Beck v. Dep't of Just.*, 997 F.2d 1489, 1492 (D.C. Cir. 1993) (internal citation omitted). "[T]he question is whether, given the information already disclosed by [the agency], the incremental value served by disclosing [the] name outweighs that person's privacy interest." *Am. Immigr. Lawyers Ass'n*, 830 F.3d at 674.

Defendant properly withheld several categories of personal information under Exemption 6. First, Defendant withheld from five records (records 56, 57, and 77-79) the names of lower-level agency staff with a heightened privacy interest due to risk of harassment.[2] Second, it withheld the personal phone numbers of private individuals, including former agency employees (records 55, 63, and 65-68). Third, it withheld information relating to individuals' personal health

---

[2]    Defendant has revealed the names of three employees initially withheld in records 60-62. While records 77-79 were withheld in their entirety under Exemption 5, the identities of certain staff named in those records is also withheld under Exemption 6.

conditions (record 60), the name of a private individual whose name was raised in passing as a prospective employee (record 69), snippets of a private conversation (record 58), and a non-federal employee's personal career speculation (record 64). In light of the records that Defendant already has disclosed, Plaintiff fails to show that disclosing the information withheld under Exemption 6 would shed light on what the government is up to, much less to any degree that outweighs the privacy interests of the individuals whom these records concern.

An agency's burden to show foreseeable harm under Exemption 6 is related to its purpose of protecting personal privacy. *See Ecological Rts. Found. v. EPA*, 541 F. Supp. 3d 34, 65 (D.D.C. 2021). Exemption 6's purpose is "to protect the privacy of individuals identified in certain agency records such that disclosure of identifying information is a harm in and of itself." *Id.* (internal citations omitted). Thus, under Exemption 6, an agency "need not establish much more than the fact of disclosure to establish foreseeable harm." *Id*.

### A.    Names of Agency Staff

Private citizens and public employees have a privacy interest in their "names and addresses, the release of which could create a palpable threat to privacy." *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006). Defendant properly withheld records or portions thereof about lower-level technical staff involved in discussions about how to respond to a developing matter in which a former employee's use of social media was threatening reputational harm to the agency.

The cases on which Plaintiff relies are inapposite and unpersuasive. First, *International Federation of Professional & Technical Engineers v. Superior Court*, 64 Cal. Rptr. 3d 693 (Cal. 2007), is a California Supreme Court decision concerning that state's Public Records Act, not FOIA. *Nat'l W. Life Ins. v. United States*, 512 F. Supp. 454, 460-61 (N.D. Tex. 1980), involved only a list of employees' names and duty stations, and weighed the plaintiff's intended use of the requested information, an approach the Supreme Court later rejected. *See Dep't of Just. v. Reps.*

*Comm. for Freedom of Press*, 489 U.S. 749, 771 (1989) ("whether an invasion of privacy is *warranted* cannot turn on the purposes for which the request for information is made"). Finally, *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 257 (D.D.C. 2005), involved no asserted privacy interest and a "strong public interest . . . in protecting minorities against voter intimidation." *Id.* Here, in contrast, Defendant has shown a risk of threats to privacy from disclosure, and there is no countervailing public interest in disclosure.

*Ecological Rights Foundation v. EPA*, Civ. A. No. 19-0980 (BAH), 2021 WL 535725 (D.D.C. Feb. 13, 2021), is instructive. There, the Court initially ordered the release of the names of Environmental Protection Agency law enforcement officers tasked with providing protection to former Administrator Andrew Wheeler. The court balanced the public interest in knowing which agents had been taken off which enforcement assignments against the agents' privacy interest. *Id.* at *27. The Court found a substantial privacy interest in avoiding "undue attention from individuals seeking information about the Administrator and harassment from individuals seeking to disrupt the Administrator's activities as well as harassing queries for unauthorized access to information about sensitive environmental criminal investigations to which PSD agents might be assigned" as well as retaliation from members of the public upset about the specific investigations to which they had previously been assigned. 2021 WL 535725, at *27. That privacy interest was diminished by the notion that the agency "appears to routinely release the names of [such] agents for public relations purposes," *id.* at *29, and further, the privacy interest did not outweigh the purported "significant public interest in tracing [the agency's] transfer and reallocation of law enforcement agents" based on a recent Inspector General investigation on that transfer. *Id.* at *30. On reconsideration, the court found that only names of senior and supervisory agents were included in agency press communications, giving them a reduced privacy interest in comparison to "staff-

level agents," whose privacy merited "additional caution" due to their "heightened and particular threat of harassment" and access to highly sensitive information. *Ecological Rts. Found.*, 541 F. Supp. 3d at 44.

Here, the employee whose identity Defendant has withheld is not public-facing, and is responsible for, among other things, maintaining Defendant's social media presence. 2d Templeton Decl. ¶ 13. That employee has no decisional authority over the contents of Defendant's Twitter account, much less agency policy. Revealing that employee's identity in connection with sensitive discussions about stances taken by the agency on social media would not further any public interest in informing the public about the operations of the government but would expose them to a heightened risk of online harassment. *Id.*

The harm that releasing such information would cause is all the more foreseeable in light of Plaintiff's prior use of similar information. For example, in June 2022, Plaintiff publicized the name of an agency employee handling one of its FOIA requests to the *Daily Caller* for signing an email concerning a delay. *See* Thomas Catenacci, *Top US Energy Officials Appear to be Stonewalling FOIA Requests for Secret White House Meetings*, Daily Caller (June 17, 2022), https://dailycaller.com/2022/06/17/richard-glick-ferc-pipeline-institute-for-energy-research/.[3]

### B.    Phone Numbers and Email Addresses

Defendant also appropriately withheld the personal phone numbers of private persons and former agency officials. "There is generally 'a stronger case to be made for the applicability of Exemption 6 to phone numbers" than other incidental information. *Nat'l Right to Work Legal Def. & Educ. Found., Inc. v. Dep't of Lab.*, 828 F. Supp. 2d 183, 192 (D.D.C. 2011) (internal quotation marks omitted) "Disclosure of these numbers could subject the individuals to annoyance,

---

[3]     Although the date on the letter appears as April 28, 2022, it was in fact sent in 2023.

embarrassment, and harassment in the conduct of their official and private lives." *Id.* While there is a "legitimate public interest in ferreting out undue influence on the government by outside groups," Plaintiff fails to show that "disclosure of these phone numbers would actually advance this rarefied interest in this particular case." *Id.* Plaintiff's argument that Defendant wrongfully withheld staff email addresses and phone numbers also fails. Defendant did not withhold any staff email addresses. *See* Rev. *Vaughn* Index. And it only withheld certain former employees' phone numbers in records 55 and 69. *Id.* at 5-6. There is no public interest in revealing the private phone numbers of former public employees.

### C.     Prospective Career Information

Defendant also properly withheld the names of job applicants. While Plaintiff speculates that releasing the name withheld in records 66 and 69 would reveal "what sort of leanings and background [Defendant] may currently prize," Pl.'s Mem. at 26, neither record reflects information on agency business or of any public interest. Record 66 does not concern a prospective agency employee, but a prospective detailee to another office outside the agency. That employee has since departed the agency. 2d Templeton Decl. ¶ 14. Defendant also properly withheld information relating to a private individual whose name was raised in passing as a potential employee. *Id.* The named individual is not an agency employee and has not been an agency employee for at least ten years. *Id.* Record 69 does not contain any evaluation of that individual's background or suitability for employment at the agency by any agency staff, and their name has no bearing on any activities or operations of the government. *Id.* Plaintiff offers no authority for the dubious notion that individuals whose names appear in correspondence to which they are not party, and of which they presumably are unaware, have a diminished privacy interest in such records. Pl.'s Mem. at 25. And Plaintiff's assertion that it would further investigate these individuals' "leanings and background" virtually assures that revealing their identities would lead to unwarranted invasions of privacy. *Id.*

Finally, information in record 64 was withheld because Scripps's speculation about his own career is of no public interest as it reveals nothing concerning the operations or activities of the government and works an intrusion upon his privacy.[4] *See Consumers' Checkbook Ctr. for the Study of Servs. v. Dep't of Health & Human Servs.*, 554 F.3d 1046, 1056 (D.C. Cir. 2009) ("We have been shown no public interest in . . . disclosure . . . . We need not linger over the balance; something, even a modest privacy interest, outweighs nothing every time.").

## IV.   Plaintiff's Challenge to the *Vaughn* Index's Adequacy

Plaintiff's challenge to the *Vaughn* Index's adequacy is meritless. The purpose of a *Vaughn* Index is to "permit adequate adversary testing of the agency's claimed right to an exemption." *Nat'l Treas. Emps. Union v. Customs Serv.*, 802 F.2d 525, 527 (D.C. Cir. 1986). A *Vaughn* Index may take any form so long as its entries "demonstrate that the information withheld logically falls within the claimed exemption" for a reviewing court. *CREW v. Dep't of Lab.*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (internal citations omitted); *see also Spirko v. Postal Serv.*, 147 F.3d 992, 998 n.4 (D.C. Cir. 1998) ("The form of the *Vaughn* index is unimportant and affidavits providing similar information can suffice.") (citing *Gallant v. NLRB*, 26 F.3d 168, 172-73 (D.C. Cir. 1994)). As Defendant has explained, the *Vaughn* Index adequately demonstrates that the withheld records fall within the scope of one or more FOIA exemptions, and that their disclosure foreseeably would harm interests that such exemptions protect.

Nor, contrary to Plaintiff's assertion, has Defendant provided insufficient information about the records at issue. The records at issue are screenshots from personal devices, such that information about the date or full names of the recipients of such messages is available to

---

[4]   Information withheld from record 64 was initially mislabeled in the initial *Vaughn* Index as the identity of lower level staff, but has been correctly identified in the revised *Vaughn* Index.

Defendant only to the extent it was captured in the screenshot, or the record's custodian is available to provide it. 1st Templeton Decl. ¶ 15. Two of the three custodians at issue, Sarah Venuto and Elin Katz, are no longer agency staff, and so are unavailable to provide additional information. 2d Templeton Decl. ¶ 4. Regardless, to address any concerns about the *Vaughn* Index's completeness, Defendant's FOIA staff sought further information on the records at issue by consulting with staff of the one custodian still employed by Defendant and other individuals who might have knowledge regarding the records at issue. *Id.* ¶¶ 4-14; *See also* Rev. *Vaughn* Index.

Plaintiff's argument that the *Vaughn* Index lacks sufficient information to show that the records withheld under the deliberative process privilege are intra-agency in nature fails as well. All individuals who were party to these records were full-time agency employees when the communications were made, except as to record 50, an exchange between an agency employee and an employee of the Department of Energy. 2d Templeton Decl. ¶ 13; *see also Nat'l Sec. Archive*, 752 F.3d at 462 ("the deliberative process privilege covers deliberative, pre-decisional communications within the Executive Branch"); *Brown v. Dep't of State*, 317 F. Supp. 3d 370, 377 (D.D.C. 2018) (deliberative process privilege "is not limited to communications only within one agency within the Executive Branch," so "the fact that this document constitutes a communication between members of two agencies does not preclude the application of the deliberative process privilege"); *Hunton & Williams LLP v. EPA*, 248 F. Supp. 3d 220, 247 (D.D.C. 2017) ("The deliberative process can—as it did here—span between two different agencies."); *Jud. Watch, Inc. v. Consumer Fin. Prot. Bureau*, 60 F. Supp. 3d 1, 11 (D.D.C. 2014) ("it is clear that communications between [agency] and White House staff may [be subject to] . . . deliberative process privilege"). Where Defendant withheld the names of employees from the *Vaughn* Index, their roles at the agency are explained. *See* Rev. *Vaughn* Index. Withholding of further identifying

17

information about staff is consistent with Defendant's responsibility to provide "as much information as possible without thwarting the exemption's purpose." *King*, 830 F.2d at 224.

Plaintiff's argument that it is owed more information on the withheld records, meanwhile, rests on fact-specific cases concerning how agencies should apply certain exemptions to specific records, which are inapposite here. In *American Oversight v. Department of Health and Human Services*, Civ. A. No. 17-0827 (EGS), 2022 WL 1719001, at *18-19 (D.D.C. May 27, 2022), for example, the Court required an agency to disclose the attendees at and locations of certain meetings. Such a requirement would make no sense here, as the withheld records do not concern meetings. These cases thus do not support the idea that the *Vaughn* Index and declarations inadequately justify Defendant's withholdings. Nor is there need to provide additional information regarding records that Defendant already has released in full, as Plaintiff appears to demand. *See* Pl.'s Mem. 5; 7 n.3; 9-10, ECF No. 14 (inaccurately describing records released in full as "redacted"), 18 (characterizing records released in full as redacted pursuant to Exemption 6).

Plaintiff's argument that the individuals who performed the search must submit their own declarations because Templeton's declaration is hearsay, Pl.'s Mem. at 39-40, is meritless. The personal knowledge requirement "is deemed met by 'an affiant who reviews the business records of the organization that he or she is affiliated with, and who testifies on the basis of information acquired through the performance of his or her official duties,' since that person 'may be deemed competent by the court to testify as to those records.'" *Ecological Rts. Found.*, 541 F. Supp. 3d at 47 (quoting *Akers v. Beal Bank*, 845 F. Supp. 2d 238, 242 (D.D.C. 2012)). A declarant may "testify to [her] own observations upon review of . . . documents" and "practices of which [s]he possesses personal knowledge." *Londrigan v. FBI*, 670 F.2d 1164, 1174 (D.C. Cir. 1981).

Plaintiff's argument that Defendant's moving papers were not prepared in good faith or are otherwise unreliable is similarly unavailing. To a substantial degree, Plaintiff merely quibbles with the degree of specificity that Defendant provided in describing the withheld records and its reasons for withholding them, which plainly does not suggest bad faith or unreliability. *See* Pl.'s Mem. at 10-11; *see also SafeCard Services, Inc v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Plaintiff also complains about typos or assertions made in good faith earlier in litigation based on imperfect information, which have since been corrected. *See id.*; *Meeropol v. Meese*, 790 F.2d 942, 953 (D.C. Cir. 1986) ("what is expected of a law-abiding agency is that it admit and correct error when error is revealed"). Defendant's declaration and other moving papers are entitled to "a presumption of good faith," *Bartko v. Dep't of Just.*, 898 F.3d 51, 74 (D.C. Cir. 2018), which Plaintiff's bald allegations fail to overcome. Plaintiff's complaint that Defendant mistakenly claimed to have withheld more information than it really did, *see* Pl.'s Mem. at 11, is particularly puzzling, as it shows that, if anything, Defendant was even more forthcoming than it let on. Regardless, Plaintiff does not and cannot claim to have suffered prejudice as a result. *See Afshar v. Dep't of State*, 702 F.2d 1125, 1135 (D.C. Cir. 1983) (agency error subject to harmless error analysis under FOIA); *Lykins v. Dep't of Just.*, 725 F.2d 1455, 1466 (D.C. Cir. 1984) (Edwards, J., concurring in part and dissenting in part) (action was "at worst harmless error" under FOIA); *Whalen v. Marine Corps*, 407 F. Supp. 2d 54, 61 n.6 (D.D.C. 2005) (error was harmless under FOIA); Fed. R. Civ. P. 61 ("the court must disregard all errors and defects that do not affect any party's substantial rights.").

## CONCLUSION

This Court should grant Defendant summary judgment, and deny Plaintiff's motion for summary judgment.

Dated: July 31, 2023                                    Respectfully submitted,

MATTHEW M. GRAVES
D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:  /s/ Bradley G. Silverman
     BRADLEY G. SILVERMAN
     D.C. Bar #1531664
     Assistant United States Attorney
     601 D Street, NW
     Washington, DC 20530
     (202) 252-2575
     bradley.silverman@usdoj.gov

*Attorneys for the United States of America*

20