## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **INSTITUTE FOR ENERGY RESEARCH**, | |
| Plaintiff, | |
| v. | Case No. 22-cv-3414 (CRC) |
| **FEDERAL ENERGY REGULATORY COMMISSION**, | |
| Defendant. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

The Institute for Energy Research ("IER") sued the Federal Energy Regulatory Commission ("FERC" or "the agency") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for its handling of a request seeking text messages from three FERC employees. The agency found only 90 messages responsive to IER's request, and, as a result, moved for summary judgment soon after the case was filed. IER opposes that motion on two principal grounds: (i) the agency's search was inadequate, and (ii) the agency failed to justify its withholdings. Finding these claims for the most part lack merit, the Court will grant summary judgment as to the adequacy of the agency's search and partial summary judgment as to its withholdings.

### I.   **Background**

In August 2022, IER submitted a FOIA request to FERC seeking copies of text messages sent or received by three FERC officials—Commissioner Allison Clements, Sarah Venuto, and Elin Katz. Am. Compl. Ex. A ("FOIA Request") at 1–2. Specifically, the request sought:

> Copies of all text messages for [the three officials], whether person-to-person or part of a "chat" (regardless of how many or the identities of the parties on the chat) which: a) includes anywhere, one or more of the words [i] FERC, [ii] GHG (in any form, e.g., including also in GHGs), [iii] FOIA, and/or [iv] methane,

regardless of the identity of any other parties to the correspondence; or b) were sent to or from [one of six named White House officials].

Id. (emphasis omitted).  IER's request specified different time periods for the two halves of the request and defined "text message" to include "any message sent or received via Signal, WhatsApp, or Telegram."  Id. at 1 n.2, 2.  The request also stated, "Please consider as responsive entire email 'threads' containing any information responsive to this request, regardless whether any part of that thread falls outside the cited time parameters."  Id. at 4.

After receiving the request, FERC's Office of External Affairs ("OEA"), which oversees the agency's processing of FOIA requests, directed the three FERC officials to search their personal and official phones for responsive messages.  First Declaration of Carolyn Templeton ("First Templeton Decl.") ¶¶ 3, 15.  With the assistance of the agency's Information Technology department, each individual submitted screenshots of text messages responsive to the first half of the request to OEA and the Office of General Counsel ("OGC"), which helps handle FERC's FOIA requests.  Id. ¶ 9.  None of officials identified messages responsive to the second half of IER's request, and FERC staff also confirmed that none of them either used alternative messaging applications (such as Signal or WhatsApp) or had responsive messages on those applications.  Id. ¶ 15.

In September 2022, the agency issued a determination letter releasing 47 messages in full and withholding, either in part or in full, an additional 43.  Id. ¶ 11; see also Supplemental Vaughn Index ("Supp. Vaughn Index") [ECF No. 18-2].  Following an unsuccessful appeal of the agency's determination letter, id. ¶¶ 12–14, IER filed this suit, Compl.  Soon after, the agency filed its motion for summary judgment.  Mot. Summ. J.  After briefing for that motion was completed, the agency also released an additional eight records in full and removed certain redactions from two others.  Def.'s Not. of Supp. Rel.

## II.   Legal Standard

"Summary judgment is the typical and appropriate vehicle to resolve FOIA disputes." Citizens for Resp. & Ethics in Wash. v. Dep't of Homeland Sec. ("CREW"), 525 F. Supp. 3d 181, 187 (D.D.C. 2021).  When reviewing a motion for summary judgment under FOIA, "the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester," and summary judgment is appropriate only after "the agency proves that it has fully discharged its FOIA obligations."  White Coat Waste Project v. Dep't of Veterans Affs., 404 F. Supp. 3d 87, 95 (D.D.C. 2019) (cleaned up).  "[T]he burden of proof is always on the agency to demonstrate that it has fully discharged its obligations under the FOIA." McKinley v. FDIC, 756 F. Supp. 2d 105, 111 (D.D.C. 2010).

## III.   Analysis

Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (cleaned up).  The statute thus requires an agency to perform an *adequate* search—*i.e.*, a search that is "reasonably calculated to uncover all relevant documents."  Weisberg v. DOJ, 705 F.2d 1344, 1350–51 (D.C. Cir 1983).  At the same time, "Congress sought to balance the public's interest in governmental transparency against legitimate governmental and private interests that could be harmed by release of certain types of information."  United Techs. Corp. v. DOD, 601 F.3d 557, 559 (D.C. Cir. 2010) (cleaned up).  To that end, Congress enumerated nine statutory exemptions.  Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002).  FOIA's "strong presumption in favor of disclosure" requires the statutory exemptions "to be narrowly construed."  Id. (cleaned up).

IER has challenged both the adequacy of FERC's search and the exemptions the agency applied.  As to adequacy, summary judgment is appropriate where the agency demonstrates "beyond material doubt," <u>Truitt v. Dep't of State</u>, 897 F.2d 540, 542 (D.C. Cir. 1990) (cleaned up), "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested," <u>Oglesby v. Dep't of Army</u>, 920 F.2d 57, 68 (D.C. Cir. 1990).  As to FOIA's exemptions, summary judgment is appropriate where the agency demonstrates that the claimed exemptions "apply to each record for which they are invoked." <u>CREW</u>, 525 F. Supp. 3d at 187.  The agency can make this showing "through the submission of an index of documents, known as a <u>Vaughn</u> Index, sufficiently detailed affidavits or declarations, or both." <u>Agrama v. IRS</u>, 282 F. Supp. 3d 264, 273 (D.D.C. 2017) (cleaned up).  When evaluating whether an agency is entitled to summary judgment, the agency's declarations are entitled to a presumption of good faith. <u>See, e.g.</u>, <u>CREW</u>, 525 F. Supp. 3d at 188.

The Court will address the adequacy of FERC's search and then turn to its exemptions.

A.   <u>Compliance with Local Rule 7(h)(1)</u>

Before the Court gets there, however, it must resolve a threshold matter.  IER contends the Court should deny FERC's motion because it fails to comply with Local Rule 7(h)(1)'s requirement that a summary judgment motion "be accompanied by a statement of material facts as to which . . . there is no genuine issue." LCvR 7(h)(1).  Because FERC's statement describes only the "submission" of IER's request, FERC's "acknowledgment of its receipt," and the trajectory of IER's administrative appeal, IER insists that the statement fails to live up to Rule 7(h)(1)'s strictures.  Opp'n at 40.  The Court does not concur.  FERC's statement cites to a declaration submitted by Carolyn Templeton, OEA's Director of Strategic Operations & Special

Project, and the declaration describes the scope and methodology of the agency's search and the rationales for the claimed withholdings.  See Vaughn Index [ECF 13-4]; First Templeton Decl. ¶ 1.  "[C]itation to [Templeton's] affidavit is sufficient" to delineate the facts as to which the agency believes there is no genuine issue.  Sabra v. Customs & Border Prot., 590 F. Supp. 3d 351, 359 (D.D.C. 2022).  And "it is clear to the Court which facts in [the] affidavit support" the agency's motion.  Id.; see also Calderon v. Dep't of Agric., 236 F. Supp. 3d 96, 108 (D.D.C. 2017) ("[Plaintiff] was not prejudiced by any non-compliance, as he had a full opportunity to submit his own Statement of Material Facts in support of his cross-motion, to submit supporting declarations, and to otherwise address any factual issues he found with [the agency's] submissions.").  Thus, the Court will not deny FERC's motion for alleged noncompliance with Local Rule 7(h)(1).

    B.  Adequacy of the Search

IER raises two issues with FERC's search.  The first concerns FERC's definition of responsive records, and the second challenges the process by which the agency conducted the search.

    *1.  Definition of a Record*

IER claims FERC misconstrued its request by producing only "the specific texts that included the specified search terms."  Opp'n at 34 (quoting First Templeton Decl. ¶ 16).  According to IER, FERC was required to produce "entire text message threads," even if only one message in the thread hit on a responsive term.  Id.  Because agencies may not redact "non-responsive information from a record deemed responsive," IER's challenge comes down to whether FERC properly defined a "record" for purposes of the request.  Am. Immigr. Laws. Ass'n v. Exec. Off. for Immigr. Rev. ("AILA"), 830 F.3d 667, 670 (D.C. Cir. 2016).  Put

differently, if FERC was required to treat an entire text thread as responsive, it could not have redacted non-responsive messages within that thread.

Because FOIA, itself, does not define a record, agencies "in effect, define a 'record' when they undertake the process of identifying records that are responsive to a request." Id. at 678.  Though they may define a "record" in a "range of possible ways," the D.C. Circuit has erected some guideposts that inform that analysis.  Id.  First, the agency's definition must be "reasonable" id. at 679, and cannot flip "midway through litigation," Judge Rotenberg Educ Ctr., Inc. v. U.S. Food & Drug Admin., 376 F. Supp. 3d 47, 60 (D.D.C. 2019).  Second, the circuit has suggested that a set of criteria from DOJ's Office of Information Policy ("OIP") are helpful for "agencies to take into account."  AILA, 830 F.3d at 678 (citing DOJ, OIP Guidance: Determining the Scope of a FOIA Request, FOIA Update, Vol. XVI, No. 3 (1995)).[1]  "Those criteria include the requester's intent, maintaining the integrity of the released documents, the scope of the request, the agency's own knowledge regarding storage and maintenance of documents, efficiency, cost, resource allocation, and maintaining the public's trust in transparency."  Shapiro v. CIA, 247 F. Supp. 3d 53, 74–75 (D.D.C. 2017).  And, finally, in AILA, the circuit "set a minimum bar for what cannot be considered a discrete, non-responsive record: a single (or perhaps a few) sentences within an otherwise responsive paragraph."  Id. (citing AILA, 830 F.3d at 679) (emphasis omitted).

With those guideposts in mind, the Court finds FERC did not unreasonably define a record as a single text message.  Regarding the first and third OIP criteria—the requestor's intent and scope of the request—two other principles of construction guide the Court's analysis.  On the one hand, agencies owe a "duty to construe [] FOIA request[s] liberally."  Nation Mag.,

---

[1]  https://perma.cc/N7AY-ZU8J.

Wash. Bureau v. U.S. Customs Serv. ("Nation Magazine"), 71 F.3d 885, 890 (D.C. Cir. 1995);

see also Gov't Accountability Project v. Dep't of Homeland Sec., 335 F. Supp. 3d 7, 12 (D.D.C.

2018) ("FOIA requests are not a game of Battleship.").  On the other, the D.C. Circuit has

"established that agencies should read FOIA requests 'as drafted, not as either agency officials or

[the requester] might wish [they] w[ere] drafted.'"  Nat'l Sec. Couns. v. CIA, 969 F.3d 406, 410

(D.C. Cir. 2020) (quoting Miller v. Casey, 730 F.2d 773, 777 (D.C. Cir. 1984)) (alteration in

original).

       Based on these criteria, FERC's definition of a record as a single message was

reasonable—at least for the first half of the request.  IER's request was clear:  It sought "text

messages" that either (i) "include[d] anywhere" "one or more" of four words or (ii) were sent to

or from one of six White House officials.  FOIA Request at 1–2.  For the second half of the

request, the whole thread might be the appropriate unit for a record as the request sought *every*

message sent between the named FERC and White House officials.  But, of course, the agency

found no records responsive to that half of the request.  First Templeton Decl. ¶ 15.  By contrast,

the first half of the request sought only the specific "text messages" that hit on one of the listed

terms—not text threads, text conversations, or text discussions.

       The D.C. Circuit's analysis of a related issue in Nation Magazine is instructive.  There,

the court considered whether the Customs Service had properly construed a request for "records

and documents indexed or cross-indexed under the name H. Ross Perot," with a further

explanation that the request included "all records and documents pertaining to Mr. Perot."  71

F.3d at 888.  The Customs Service searched in a repository where records were "accessible by a

name or personal identifier."  Id. at 889.  In other words, it searched only for documents indexed

or cross-indexed under Perot's name.  Id. at 890.  The circuit found the agency misconstrued the

request.  "The words 'pertaining to,' coupled with the inclusion of references to [a Customs Service memorandum] in the materials appended to the request letter, were sufficient to alert the agency that appellants sought information about Perot, even if it was not indexed under his name."  Id.

Here, the first part of IER's request sought the equivalent of just indexed or cross-indexed documents.  Had IER sought messages "pertaining to," "about," or "concerning" one of the four referenced terms, then more than just a single message would be the appropriate unit for a record.  But IER sought just messages "includ[ing]" the referenced terms.  Moreover, unlike in Nation Magazine, other parts of IER's request did not "alert" the agency that IER wanted entire threads.  In a section defining the "[i]nformation [s]ought," the request instructed FERC to "consider as responsive entire *email 'threads'* containing any information responsive to this request, regardless whether any part of that thread falls outside the cited time parameters."  FOIA Request at 4 (emphasis added).  The section made no mention of text message threads, and, because the actual request did not seek emails, the agency was entitled to ignore this definition.[2]

The other OIP criteria do not change the result.  Take "maintaining the integrity of the released documents."  Arguably, FERC should have defined the text message that hit on the referenced term as well surrounding messages as one record to maintain the messages' integrity.  Or, as IER contends, even if the agency properly defined a record as a single text, it was nonetheless required to produce surrounding messages as "necessary context."  Opp'n at 37.  But these suggestions ignore a fundamental feature of text messages.  Unlike email threads, which tend to contain "a natural progression of conversation on a unified topic," Gellman v. Dep't of

---

[2]  FERC can also be excused for reading the actual request independently of this definition as the latter came in the middle of a thirteen-page, single-spaced FOIA request with many other seemingly boilerplate provisions.

Homeland Sec., 613 F. Supp. 3d 124, 137 (D.D.C. 2020), a text message thread captures the entire conversation history between two people, with no "Subject" lines or discrete chains to demarcate new topics.  One moment you might text your colleague a question about the presentation for an upcoming meeting on "GHGs" (or greenhouse gases), and the next you're discussing what snacks to bring to the meeting.  Are the texts about snacks part of the same conversation?  Or should the agency treat those messages as a new (and likely non-responsive) record?  The answer is unclear.  As Ms. Templeton noted, the agency would be required to make "arbitrary" calls about where one text-message record ends and another begins.  First Templeton Decl. ¶ 16.  Had IER submitted a differently worded request whose scope went beyond single messages, the Court would not let the agency throw its hands up in confusion.  But given that IER requested only the specific text messages containing the referenced terms, FERC's construction was reasonable.

For similar reasons, the criteria of efficiency, cost, and resource allocation also support the agency's definition of a record.  Indeed, "a contrary conclusion would burden the agency with having to process [text messages] on topics wholly unrelated to the subject of the FOIA request—including ascertaining whether any exemptions apply—which would hinder its ability to timely process requests and produce non-exempt, responsive documents to waiting requesters."  Gellman, 613 F. Supp. 3d at 138.

And, finally, FERC's definition surpassed AILA's minimum bar.  Though some of the responsive records may have been a single sentence, that should come as no surprise given the way most people text.  When adjusted to the text-message medium, AILA would not permit agencies to define single words or clauses as a record.  And FERC did not do that.

In sum, though IER might have drafter's remorse about its FOIA request, the agency's definition of a record was reasonable.

### 2. Search Process

On summary judgment, an agency can carry its burden as to adequacy by submitting a reasonably detailed affidavit (1) "setting forth the search terms and the type of search performed" and (2) "averring that all files likely to contain responsive materials . . . were searched." Iturralde v. Comptroller of Currency, 315 F.3d 311, 313–14 (D.C. Cir. 2003). In turn, the plaintiff can rebut the agency's affidavit by "provid[ing] countervailing evidence as to the adequacy of the agency's search." Id. at 314 (cleaned up). "[P]urely speculative claims about the existence and discoverability of other documents," however, are insufficient to rebut a reasonably detailed affidavit on summary judgment. SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (cleaned up).

IER raises a single issue with the agency's search process. It claims the search was inadequate because FERC's declarations do not specify which "staff oversaw the searches of the telephonic devices" or state "that there was any supervision of the search." Opp'n at 39. IER's wish is not the agency's command. "An agency may show its search was reasonable . . . through an affidavit by a responsible agency official, so long as the declaration is reasonably detailed and not controverted by contrary evidence or evidence of bad faith." Agrama, 282 F. Supp. 3d at 271 (cleaned up). "Accordingly, affidavits that include search methods, locations of specific files searched, descriptions of searches of all files likely to contain responsive documents, and names of agency personnel conducting the search are considered sufficient." Id.; see also Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982) (An agency need not "set forth with meticulous documentation the details of an epic search for the requested records.").

The agency's declarations meet this standard.  FERC submitted two sworn declarations from Ms. Templeton.  See First Templeton Decl.; Second Declaration of Carolyn Templeton ("Second Templeton Decl.").  Her affidavits explain that the three FERC officials named in the request searched their personal and official phones (where applicable), identified messages with the terms listed in the FOIA request, and worked with IT to submit screenshots of the messages to OEA and OGC.  First Templeton Decl. ¶¶ 9, 15.[3]  Though IER may wish the declarations revealed more than they did, IER has "not controverted" the declarations with "contrary evidence or evidence of bad faith."  Agrama, 282 F. Supp. at 271 (cleaned up).  As such, the Court grants FERC summary judgment on the adequacy of its search.

C.  Withholdings

FERC withheld information from released records pursuant to FOIA Exemptions 5 and 6. An agency is entitled to summary judgment on its withholdings if it demonstrates "that its claimed FOIA exemptions apply to each record for which they are invoked."  CREW, 525 F. Supp. 3d at 187.  Again, the agency can make this showing "through the submission of an index of documents, known as a Vaughn Index, sufficiently detailed affidavits or declarations, or both."  Agrama, 282 F. Supp. 3d at 273.  "The description and explanation the agency offers should reveal as much detail as possible as to the nature of the document, without actually

---

[3]  The Court notes that the Templeton declaration does not include the generally required averment that "all files likely to contain responsive materials . . . were searched."  Nor does it explicitly list the search terms the three FERC officials used in identifying messages.  IER, however, does not claim these omissions rendered the search inadequate, and thus has forfeited any challenge on that basis.  See Citizens for Resp. and Ethics in Wash. v. Dep't of Educ., 905 F. Supp. 2d 161, 168 n.5 (D.D.C. 2012) (plaintiff's failure to raise segregation or redaction arguments at summary judgment resulted in waiver); Zhandov v. Dep't of State, 22 F. App'x 12, 12 (D.C. Cir. 2001) (per curiam) (plaintiffs waived their claim that the agency's affidavit was inadequate by "failing to raise the issue" with the district court).

disclosing information that deserves protection." Oglesby v. Dep't of Army, 79 F.3d 1172, 1176 (D.C. Cir. 1996).

    *1. Exemption 5*

    Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  Under this exemption, an agency is permitted to assert "the privileges that the Government could assert in civil litigation against a private litigant," including "the deliberative process privilege."  Nat'l Sec. Archive v. CIA, 752 F.3d 460, 462 (D.C. Cir. 2014).  The deliberative process privilege is aimed at "enhanc[ing] the quality of agency decisions" by ensuring that officials can "communicate candidly among themselves."  Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8–9 (2001) (cleaned up).  To that end, courts consider whether the record is "predecisional" and "deliberative."  Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980) (cleaned up).  A record is "predecisional" if "it was generated before the adoption of an agency policy[.]"  Id.  And a record is "deliberative" if "it reflects the give-and-take of the consultative process."  Id.  The exemption thus covers "recommendations, draft documents, proposals, suggestions," and the like.  Id.

    IER challenges FERC's justifications for its Exemption 5 withholdings on three grounds, each of which centers on perceived deficiencies in FERC's Vaughn index.

    *a.  Names*

    First, IER claims FERC failed to substantiate its Exemption 5 withholdings by omitting the names of senders and recipients in certain withheld texts.  FERC since supplemented its Vaughn Index and released additional messages, thus mooting part of this challenge.  See Supp. Vaughn Index at 4–6 (FERC added names to Documents 49, 55 and 71); Not. of Supp. Release

(FERC released Documents 50 and 74 in full). As for the remaining texts IER flags as deficient,

FERC released three of them in full as part of its original release. See Supp. Vaughn Index at 1

(FERC released Documents 7, 12, and 15 in full). And FERC redacted the names of senders and

recipients for the others under Exemption 6, not Exemption 5. See id. at 5–6 (FERC redacted

names in Documents 58, 59, 63, 65–68 under Exemption 6).[4] As a result, FERC has not omitted

any names pursuant to Exemption 5.

> b. Dates

Second, IER takes issue with the absence of dates in some of FERC's index entries. IER

claims that without dates, "it cannot be established that the parties to the communication [we]re

[] agency employees at the time of the communication." Opp'n at 9. Accordingly, IER

contends, FERC has failed to show that the communications qualify as "inter-agency or intra-

agency" or "predecisional." Id. Again, FERC has partially mooted this challenge by releasing

many of the texts at issue, Not. of Supp. Release (FERC released Documents 51, 74–76, 78, 80,

81); Supp. Vaughn Index at 6 (FERC released Document 71), and by adding a date to the

Vaughn entry for another, Supp. Vaughn Index at 5 (FERC added a date to Document 55). As

for the rest, FERC released in full many of the other messages IER flagged so IER's Exemption

5 challenges have no bearing on these. Supp. Vaughn Index at 1–3 (FERC released Documents

1–47 in full). And, similarly, FERC redacted two of the texts pursuant to Exemption 6 so IER's

"inter-agency" and "predecisional" arguments have no play. See Supp. Vaughn Index (FERC

applied redactions to Documents 57 and 67 under Exemption 6).

That leaves Documents 49, 70, 72–73, 79, and 83–85 without a date. The D.C. Circuit

has instructed that "[d]ates are but one way to illustrate a chronology," and an agency may

---

[4] The Court will address the Exemption 6 withholdings below.

validly rely on "other ways to prove that the undated documents were indeed predecisional."

Jud. Watch, Inc. v. FDA, 449 F.3d 141, 151 (D.C. Cir. 2006); Spirko v. USPS, 147 F.3d 992, 998 n.4 (D.C. Cir. 1998) ("The form of the Vaughn index is unimportant and affidavits providing similar information can suffice."). FERC's affidavits did the job. Ms. Templeton explained that each of the dateless messages reflect "FERC's internal deliberations about contemplated policy actions," and she described the contemplated action at issue in each message. Second Templeton Decl. ¶¶ 9–12. Documents 49, 72–73, and 79 reflect deliberations about whether a former staff member violated FERC's social media policies and how to respond, if so. Id. ¶ 10(a). Document 70 concerns how FERC should respond to a media inquiry. Id. ¶ 10(b). And Documents 83–85 include first impressions and evaluations about the legal or strategic risks in a range of proposed policies and upcoming votes. Id. ¶¶ 10(e), 12 (Policies and votes concerned "market regulation, greenhouse gases, liquefied natural gas pipelines, and Commission orders"). On the basis of these explanations, the Court finds FERC justified those Exemption 5 withholdings.

### c. Justifications

Third and relatedly, for many withheld or redacted messages, IER claims the justifications in the Vaughn Index lack sufficient detail or fail to establish that the deliberative process privilege shields the information from release. Opp'n at 10–18. The Court will take this challenge up in three parts but finds it similarly unavailing. One, FERC released some of the challenged messages in full and removed Exemption 5 redactions from the others (*i.e.*, Documents 50–51, 74–78, and 80–81). See Not. of Supp. Release.

Two, for another set of messages, FERC added detail to the justifications in the Supplemental Vaughn Index and Ms. Templeton's second declaration. Those are:

- **Document 84**.  IER claimed the subject of the message—"agency contracts"—was not covered by the privilege.  Ms. Templeton's second declaration explained that the record was misidentified as "relating to 'FERC contracts' due to ambiguous language in the text of the record."  Second Templeton Decl. ¶ 12.  But "[f]urther review" revealed "that the record discusses policy alternatives regarding certain types of contracts between private parties in the course of FERC's regulation of energy markets" and does not "relate to any contract to which FERC is a party.  Id.

- **Document 88–89**.  Based on the original <u>Vaughn</u> Index, IER claimed that these texts were "primarily about carrying out 'prior' agency decisions," and thus were not predecisional.  Opp'n at 15.  Ms. Templeton's second declaration clarified that they relate to "policies *in development*" or "*pending* votes."  Second Templeton Decl. ¶ 10(e) (emphasis added).  <u>See also</u> Supp. <u>Vaughn</u> Index at 9 (Document 88 reflects a "[d]eliberation concerning a review of how the reason underlying a prior decision may influence the decisionmaking process and rationale . . . in a related matter," and Document 89 reflects a "[d]eliberation on how and whether prior court rulings concerning pipeline/LNG matters [] impact the Commission's decisionmaking on a pending matter.").

- **Document 90**.  IER faults the explanation in the original <u>Vaughn</u> Index as being too vague.  <u>See</u> Opp'n at 12 (the entry "does not describe *what* agency policy or decision the text messages relates to").  The supplemental index and Ms. Templeton's second declaration provide the missing detail.  <u>See</u> Supp. <u>Vaughn</u> Index at 10 ("Message describing deliberations regarding drafting of a Notice of Proposed Rulemaking."); <u>see also</u> Second Templeton Decl. ¶ 10(g) ("Description of specific discussions at a deliberative meeting concerning the development of a rule's text before its notice of proposed rulemaking was issued.").

That brings us to the third set of messages, which require slightly more analysis but ultimately fare the same.

**Documents 49, 55, 70, 72–73, and 79**.  These texts all reflect deliberations about FERC's communications policies and strategies.  As noted above, several are communications about whether a former staff member violated FERC's social media policies and how to respond.  Second Templeton Decl. ¶ 10(a).  As for the rest, Document 70 reflects a "[d]eliberation between agency officials whether to have a particular FERC employee respond to a particular media inquiry, and if so, how he should be attributed," and Document 55 is a "[d]eliberation concerning a proposed tweet."  Supp. <u>Vaughn</u> Index at 5–6.  IER claims deliberations about news releases or

possible Twitter posts are not protected by the deliberative process privilege, citing Mayer,

Brown, Rowe & Maw LLP v. Internal Revenue Services.  537 F. Supp. 2d 128, 139 (D.D.C.

2008).  But Mayer, Brown declined to apply Exemption 5 to a draft press release—not

deliberations about what to include in a press release.  And "'the overwhelming consensus'

among courts in this District is that discussions about how to respond to the press are protected

by" the deliberative process privilege.  Gellman, 613 F. Supp. 3d at 148 (quoting Am. Ctr. for

Law and Justice v. DOJ, 325 F. Supp. 3d 162, 171–72 (D.D.C. 2018)); see also ICM Registry,

LLC v. Dep't of Commerce, 538 F. Supp. 2d 130, 136 (D.D.C. 2008) ("[D]eliberations regarding

public relations policy are deliberations about policy, even if they involve 'massaging' the

agency's public image.").

     **Document 83**.  IER contends that Exemption 5 does not cover Document 83—a text

message from Carol Clayton, the legal adviser in the Office of Commissioner Clements, to the

commissioner—because the message concerns "compliance with legal requirements."  Opp'n at

15.  As IER sees it, "applying existing legal rules is not covered by [the] deliberative process

privilege."  Id.  Not so.  While the privilege "does not protect material that merely sets forth

official agency views [about] the interpretation and implementation of *existing policies*," ITT

World Commc'ns, Inc. v. FCC, 699 F.2d 1219, 1236 (D.C. Cir. 1983), rev'd on other grounds,

466 U.S. 463 (1984) (emphasis added), the privilege can shield officials' analysis or opinions

about how existing legal rules inform future policy, see ICM Registry, 538 F. Supp. 2d at 136

("Consideration of the legality of proposed agency action plainly contributes to a debate on such

action, and so [agency] opinions on [that topic] are protected by the (b)(5) exemption.").

Document 83 concerns the application of existing law to future policy.  Second Templeton Decl.

¶ 11 (The message, which reflects Clayton's "legal and policy judgment," "informally blends

three topics": (1) a particular argument before the D.C. Circuit and the reasons underlying the circuit's decision, (2) a conversation between senior officials about historical treatment of greenhouse gas emissions and the conversation's implications for future decisionmaking, and (3) an opinion regarding the applicability of *ex parte* rules in a particular factual circumstance and a proposal for certain types of open proceedings.).

The Court thus finds the deliberative process privilege applies to all of the agency's claimed withholdings.

### d. <u>Foreseeable Harm</u>

But this finding does not end the matter. Under the FOIA Improvement Act of 2016, the agency must produce privileged materials unless it "reasonably foresees that disclosure would harm an interest protected by" the FOIA exemption. 5 U.S.C. § 552(a)(8)(A)(i)(I). "In the context of withholdings made under the deliberative process privilege, the foreseeability requirement means that agencies must concretely explain how disclosure 'would'—not 'could'— adversely impair internal deliberations. A perfunctory state[ment] that disclosure of all the withheld information—regardless of category or substance—would jeopardize the free exchange of information between senior leaders within and outside of the [agency] will not suffice." <u>Reps. Comm. for Freedom of the Press v. FBI</u>, 3 F.4th 350, 369–70 (D.C. Cir. 2021) (cleaned up). Agencies may "sometimes satisfy" their burden "on a category-by-category basis rather than a document-by-document basis," but the "the basis and likelihood of that harm must be independently demonstrated for each category." <u>Id.</u> at 369.

FERC has met that burden for only one message: Document 90. It describes "deliberations regarding drafting of a Notice of Proposed Rulemaking," and the agency explained that releasing the message would reveal "information on the timing and nature of

prepublication deliberations" and "information on when which staff raised which concerns about particular policy deliberations."  Supp. <u>Vaughn</u> Index at 10.  Release would therefore "chill staff from sharing those concerns with one another in writing or otherwise."  <u>Id.</u>  As the agency's justification is tied to the content of the underlying message, the Court finds this demonstration of harm is "specifically focused on the information at issue."  <u>Machado Amadis v. Dep't of State</u>, 971 F.3d 364, 371 (D.C. Cir. 2020) (cleaned up).

But the agency has not met it burden for the rest of the texts withheld or redacted under Exemption 5.  For most of those, the Supplemental <u>Vaughn</u> Index repeats the same "boilerplate and generic assertion," <u>Reps. Comm.</u>, 3 F. 4th at 370, namely that "[r]elease of the text message would chill future discussions required for the decision-making progress," Supp. <u>Vaughn</u> Index at 4–9; <u>see also</u> <u>Reps. Comm.</u>, 3 F.4th at 370 (finding insufficient "boilerplate and generic assertions that release of any deliberative material would necessarily chill internal discussions."). Ms. Templeton's declarations lack needed color.  She lists two possible harms:  (i) "Staff would be chilled from sharing or discussing preliminary opinions . . . if they feared that their remarks would later become a subject of public controversy. . . .[,]" and (ii) "[t]he risk of public confusion from release of information about policy deliberations which were never finalized or [] did not reflect [FERC's] final decisionmaking . . . could result in speculation about changes in [FERC] policy within jurisdictional markets and could cause unpredictable consequences, including potential harms to energy consumers."  Second Templeton Decl. ¶¶ 9(b)–(c).  With this second harm, the agency gestures at "the precise damage to the relevant agency operations that would result from [the messages'] release."  <u>Reps. Comm.</u>, 3 F.4th at 371.  But it is just a feint. As the agency itself acknowledges, FERC "regulates the interstate transmission of electricity,

natural gas, and oil." First Templeton Decl. ¶ 2. In other words, all of its policies relate in some way to "energy consum[ption]" in "jurisdictional markets."

As such, FERC has not met its burden for these texts. Following the lead of other courts, the Court will provide FERC a "second chance" to justify its Exemption 5 withholdings and move anew for summary judgment. See, e.g., Occupational Safety & Health L. Project, PLLC v. Dep't of Lab., No. 1:21-cv-2028-RCL, 2022 WL 3444935, at *12 (D.D.C. Aug. 17, 2022).

      *2. Exemption 6*

FOIA Exemption 6 protects information in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Redactions must meet two requirements to fall within Exemption 6's ambit. First, the redactions must qualify as "personnel" files, meaning they contain "information which applies to a particular individual." Dep't of State v. Washington Post Co., 456 U.S. 595, 602 (1982). Second, "disclosure [must] compromise a substantial, as opposed to a *de minimis*, privacy interest. If a substantial privacy interest is at stake, then the court must balance the individual's right of privacy against the public interest in disclosure." Prison Legal News v. Samuels, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (cleaned up).

IER does not contest that the redactions qualify as "personnel" files and instead claims that releasing the information would not be an unwarranted invasion of personal privacy. Specifically, IER objects to FERC's withholding of three kinds of information: (i) names, (ii) phone numbers, and (iii) email addresses. The third challenge is easily disposed of as FERC did not withhold any email addresses. See Vaughn Index. And while IER's second challenge also misses the mark, the Court finds FERC has failed to justify withholding names from certain text

messages.  The Court will start there and then turn to the agency's withholding of phone numbers.

> a.  Names

FERC mooted some of IER's objections by releasing records in full or releasing the names of Commission employees.  See Second Templeton Decl. ¶ 8(a) (FERC released the names of employees in Documents 60–62 and released Document 50 in full); Supp. Vaughn Index (agency added the individual's name to its index).  And while FERC has justified the withholding in one message (Document 69), the Court finds it failed to do so for others (Documents 56–57, 64, and 77–79).

**Document 69**.  The agency properly withheld the name of a private individual mentioned in this message.  The individual was a prospective FERC employee but did not end up taking a position at the agency.  Second Templeton Decl. ¶ 14.  The agency articulated a more than *de minimis* privacy interest because "[a]s [a] private citizen[], [the prospective employee] [has] a strong privacy interest in [his or her] personal information."  Insider Inc. v. Gen. Servs. Admin., 92 F.4th 1131, 1135 (D.C. Cir. 2024).  And the balance of private and public interests does not favor disclosure.  IER claims the public has an interest in understanding the "leanings and background FERC may currently prize" in applicants, and therefore FERC's "future policy direction."  Opp'n at 26.  But as FERC explained, because an outside individual sent the message recommending the applicant, the message does "not contain any evaluation of that [prospective employee's] background or suitability for employment" "by any Commission staff."  Second Templeton Decl. ¶ 14.  The Court thus finds disclosure of the requested data "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).

**Documents 56–57, 77–79.** In these messages, the agency withheld the name of a "lower-level media relations staff" person "responsible for 'back-end' and technical upkeep to FERC's online resources and social media accounts." Second Templeton Decl. ¶ 13. The agency claims that revealing the individual's name would "expose [the person] to a heightened risk of online harassment of the kind particularly prevalent on social media." Id.

The Court finds this privacy interest insufficient to justify withholding. As the D.C. Circuit has noted, "the disclosure of names . . . is not inherently and always a significant threat to the privacy of those [named]; whether it is a significant or a *de minimis* threat depends upon the characteristic(s) revealed by virtue of being [named]." Morley v. CIA, 508 F.3d 1108, 1128 (D.C. Cir. 2007) (quoting Nat'l Ass'n of Retired Fed. Emps. v. Horner, 879 F.2d 873, 877 (D.C.Cir.1989)). The agency has not explained how this person's characteristics—his or her "back-end" role managing FERC's social media accounts—creates a particular risk of online harassment. Instead, the agency cites to an Anti-Defamation League article that describes a "surge" in online harassment "within almost every demographic group" in 2023. Second Templeton Decl. ¶ 13 n.2; ANTI-DEFAMATION LEAGUE, ONLINE HATE AND HARASSMENT: THE AMERICAN EXPERIENCE 2023 (June 27, 2023).[5] As the article notes, however, this "surge" is not unique to FERC employees or tied to particular FERC policies. See Inst. for Energy Rsch. v. FERC, No. 22-cv-2114 (BAH), 2023 WL 6121878, at *15 (D.D.C. Sept. 19, 2023) (noting that withholding the names of staff "involved in or connected to controversial government decisions, particularly on issues associated with targeting for violence, harassment, or other security-related

---

[5] https://perma.cc/X89X-QKGA.

misconduct" can be appropriate).  As such, the agency has not justified withholding the social-media manager's name.[6]

**Document 66**.  The Court similarly finds FERC has failed to justify withholding the name in Document 66.  In this message, Commissioner Clements asked a FERC employee whether she should send the person's resume to a White House team "for a potential detail" "unrelated to [the person's] duties at FERC or any FERC business."  Second Templeton Decl. ¶ 14.  The named employee has since left the agency.  Id.  The agency has failed to identify any privacy interest at stake other than its general assertion that disclosure "could invite unwanted intrusions and result in an unwarranted invasion of personal privacy."  First Templeton Decl. ¶ 26.  This explanation merely "parrot[s] the standard of [] Exemption 6" and as such fails to satisfy FERC's burden.  Pinson v. DOJ, 160 F. Supp. 3d 285, 300 (D.D.C. 2016).

The Court accordingly denies FERC's motion as to the Exemption 6 redactions in Document 56–57, 66, and 77–79.  Because IER has not cross-moved for summary judgment, the Court cannot award IER summary judgment on this issue.  The Court leaves it to the parties to decide next steps.  See also Colo. Wild Pub. Lands v. U.S. Forest Serv. ("COWPL"), No. 21-CV-2802 (CRC), 2023 WL 5846678, at *11 (D.D.C. Sept. 11, 2023).

b.  Phone Numbers

Finally, FERC's redaction of phone numbers.  Though the agency does not specify that the phone numbers are *cellphone* numbers, that goes without saying as all the phones were

---

[6]  Since Ms. Templeton's second declaration explains that the withheld name is that of a junior staffer with responsibility only for technical non-policy aspects of the agency's online presence, the Court imagines IER may no longer be interested in learning his or her name.  See Second Templeton Decl. ¶ 13.  If IER is, the Court would hope that IER would not unnecessarily share the name of this (or any other) FERC employee in ways that might subject them to embarrassment or harassment, as FERC suggests it has done in the past.  See Reply at 14.

capable of sending and receiving text messages.  FERC redacted the cellphone numbers of (i) private individuals (Documents 58–59, 65, 67–68) and (ii) staff members (Documents 55 and 66).  See Supp. Vaughn Index; see also First Templeton Decl. ¶ 26.[7]  The agency has justified withholding both categories of information.

As for the first, "it is well-accepted that the[] private contact information" of non-governmental individuals "implicates a substantial privacy interest."  COWPL, 2023 WL 5846678, at *10; see also Pejouhesh v. USPS, No. 17-cv-1684 (RDM), 2019 WL 1359292, at *6 (D.D.C. Mar. 26, 2019) ("[T]elephone numbers are precisely the sort of bits of personal information the release of which would create a palpable threat to privacy." (cleaned up)).  IER has offered no countervailing public interest in disclosure so the Court will grant the agency's motion as to these numbers.  See Horner, 879 F.2d at 879 ("[S]omething, even a modest privacy interest, outweighs nothing every time.").

As for the second, even though the agency does not clarify whether the phone numbers were personal or work numbers, see also First Templeton Decl. ¶ 15 (acknowledging that some FERC employees have both personal and work phones), the distinction does not impact the Court's decision.  The Court finds the employees have a substantial privacy interest in their cellphone numbers.  Indeed, as both this Court and another court in this district have recognized, "[c]ell phone numbers implicate a different privacy interest from landline office phone numbers because employees carry cell phones with them outside the office and regular work hours."

---

[7]  The Supplemental Vaughn Index describes the withheld phone number in Document 66 as that of "an outside individual."  Supp. Vaughn Index at 6.  Ms. Templeton clarifies, however, that the individual was a FERC employee at the time of the text and then since left.  Second Templeton Decl. ¶ 14.  Because the Court finds the agency properly withheld the cellphone numbers of FERC employees, the Court need not address whether the individual in Document 66 should be treated as a private individual or government employee for this analysis.

<u>Smith v. Dep't of Treasury</u>, No. 17-CV-1796 (TSC), 2020 WL 376641, at *4 (D.D.C. Jan. 23, 2020).  This is true even for agency-issued cellphones.  <u>See id.</u> ("Disclosing the numbers for work cell phones, which employees maintain in their homes and on their person, could subject them to the type of harassment exemption 6 was designed to prevent . . . .").  <u>See also</u> <u>COWPL</u>, 2023 WL 5846678, at *10.  And because IER had advanced no public interest in the disclosure of these numbers, the Court "need not linger over the balance."  <u>Horner</u>, 879 F.2d at 879.

c.   <u>Foreseeable Harm</u>

The agency has also demonstrated that disclosure of the individual's name in Document 66 and disclosure of the phone numbers would harm the interests protected by Exemption 6. "[A] court may find the foreseeable-harm requirement satisfied if 'the very context and purpose of' the withheld material 'make[s] the foreseeability of harm manifest.'" <u>Amiri v. Nat'l Sci. Found.</u>, 664 F. Supp. 3d 1, 21 (D.D.C. 2021), <u>aff'd</u>, No. 21-5241, 2022 WL 1279740 (D.C. Cir. Apr. 28, 2022) (quoting <u>Reps. Comm.</u>, 3 F.4th at 372).  And, here, the very context and purpose of the withheld material does exactly that.  As Ms. Templeton explains, the agency redacted names and phone numbers because disclosure "could invite unwanted intrusions and result in an unwarranted invasion of personal privacy."  First Templeton Decl. ¶ 26.  "These predicted results of disclosure are exactly what Exemption 6 seeks to prevent."  <u>Louise Trauma Ctr. LLC v. Dep't of Homeland Sec.</u>, No. 1:20-CV-01128 (TNM), 2022 WL 1081097, at *7 (D.D.C. Apr. 11, 2022).

Thus, the Court grants FERC summary judgment as to its withholding of phone numbers and the name in Document 66.

### 3.   *Segregability*

As the final stop on this ride, the Court must address whether FERC released all reasonably segregable material.  FOIA requires that agencies disclose "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt" from disclosure.  5 U.S.C. § 552(b).  Under D.C. Circuit precedent, district courts "cannot approve withholding exempt documents without making an express finding on segregability."  Machado Amadis, 971 F.3d at 371 (cleaned up).  Agencies are, however, "entitled to a presumption that they complied with the obligation to disclose reasonably segregable material."  Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1117 (D.C. Cir. 2007).   And though the "quantum of evidence required to overcome that presumption is not clear," id., "[t]he combination of the Vaughn index and the affidavits" can be "sufficient to fulfill the agency's obligation," Johnson v. Exec. Off. for U.S. Att'ys, 310 F.3d 771, 776 (D.C. Cir. 2002).

FERC fulfilled its obligation.  In her declaration, Ms. Templeton averred that, "[a]fter extensive review of each individual text message[] at issue, [she] [] determined that there is no further non-exempt information that can be reasonably segregated and released without revealing exempt information."  First Templeton Decl. ¶ 27.  See also Johnson, 310 F.3d at 776 (finding a similar agency declaration sufficient when accompanied by a detailed Vaughn index).  And the Supplemental Vaughn Index, along with the Second Templeton Declaration, describes each withholding and the basis for that withholding.  Supp. Vaughn Index, Second Templeton Decl. ¶¶ 10–14.

IER nitpicks two features of the agency's justification.  First, it claims the agency must— and failed to—aver that it conducted a "line-by-line review of documents."  Opp'n at 33.  But there is no magic-words requirement for an agency's affidavits on this score; courts have found a

variety of formulations to suffice.  See, e.g., Lewis v. Dep't of the Treasury, No. 17-CV-0943 (DLF), 2020 WL 1667656, at *8 (D.D.C. Apr. 3, 2020), aff'd sub nom. Lewis v. U.S. Dep't of the Treasury, 851 F. App'x 214 (D.C. Cir. 2021) (agency represented "that it conducted a 'thorough' document-by-document review"); Cabezas v. FBI, No. 1:19-CV-145 (CJN), 2022 WL 898789, at *11 (D.D.C. Mar. 28, 2022) (agency conducted an "extensive review of the documents at issue"); see also McKinley v. FDIC, 744 F. Supp. 2d 128, 145 (D.D.C. 2010), aff'd sub nom. McKinley v. Bd. of Governors of Fed. Rsrv. Sys., 647 F.3d 331 (D.C. Cir. 2011) ("[E]ach page was carefully reviewed.").  As Ms. Templeton conducted an "extensive review of each individual text message," which by nature are likely to be short (perhaps even one-line) messages, her declaration is sufficient.  First Templeton Decl. ¶ 27.

Next, IER claims Ms. Templeton's "assertion that no further non-exempt information can be segregated" is "insufficiently supported" because she failed to state "who at FERC allegedly conducted the review of these records" and "whether the reviewer(s) received any cooperation from the principals or not."  Opp'n at 33.  This challenge also fails.  For one, Ms. Templeton did state who conducted the segregability review:  She did.  First Templeton Decl. ¶ 27.  And two, though IER seems intent on having FERC "principals" spend their time responding to its request, see Section III.B.2 above, an agency may meet its burden without averring that the individuals who sent or received communications, themselves, made segregability determinations.  See, e.g., Taylor Energy Co. LLC v. Dep't of Interior Bureau of Ocean Energy Mgmt., 271 F. Supp. 3d 73, 80, 87, 97 (D.D.C. 2017) (finding declarations from agencies' FOIA officers sufficient for FOIA request seeking correspondence between other agency individuals); Wisdom v. U.S. Tr. Program, 266 F. Supp. 3d 93, 102, 110 (D.D.C. 2017) (finding declaration from FOIA-compliance attorney satisfied segregability burden as to emails sent between other agency

employees).  In short, neither of IER's quibbles overcome the presumption that FERC produced reasonably segregable material.

## IV.   Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that [13] Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part.  It is further

**ORDERED** that, by March 27, 2024, the parties file a joint status report indicating the need for further proceedings with a proposed schedule as necessary.

**SO ORDERED.**

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  March 13, 2024